**STATE of Iowa, Appellee,**

v.

**Edward MARTIN, III, Appellant.**

**No. 04–0025.**

Supreme Court of Iowa.

Oct. 7, 2005.

Linda Del Gallo, State Appellate Defender, and Patricia Reynolds, Assistant State Appellate Defender, for appellant.

Thomas J. Miller, Attorney General, Sharon K. Hall, Assistant Attorney General, Thomas Ferguson, County Attorney, and Heather Prendergast and Jill Dashner, Assistant County Attorneys, for appellee.

STREIT, Justice.

During a routine "pat-down," a Waterloo police officer discovered a crack pipe in Edward Martin's pants. Martin, who was convicted of cocaine possession, claims he was denied effective assistance of counsel because his lawyer did not object when a hearsay-ridden evidence tag made its way to the jury room. Finding no prejudice, we vacate the decision of the court of appeals and affirm the district court. Martin also argues the district court abused its discretion by allowing testimony recounting prior robbery arrests and describing Martin as a violent person. Although it was error to allow such testimony, the error was harmless.

## I. Facts and Prior Proceedings

On July 26, 2003, Waterloo police received a report that a man was "pimping" a female in the 200 block of West Third Street. The police stopped Edward Martin, III, who was in the area and matched the suspect's general description. One of the officers dispatched to the scene knew Martin had prior arrests for robbery and assault on a police officer. The officer

concluded Martin had violent tendencies. Martin was also wearing baggy clothes, which the officer surmised might conceal a weapon. The officer asked Martin if he could pat him down. Martin refused.

The officer forcibly began a pat-down. Twice during the pat-down, Martin made a quick, furtive movement towards his pants-pocket. One of the officers suspected Martin had something in his pocket he did not want them to find. The officer manipulated the outside of Martin's pocket and felt a hard object. The officer reached in and pulled out a metal crack pipe. Discovering burnt residue inside the pipe, the officer arrested Martin for possession of cocaine. *See* Iowa Code § 124.401(5) (2003). Later tests confirmed the residue was cocaine.

At trial, the State introduced the crack pipe into evidence as "Exhibit A." Martin alleges the judge permitted the crack pipe to go to the jury in an envelope with an evidence tag attached. The manila envelope bears an "Exhibit A" sticker and a tag with the following writing:

| | |
|---|---|
| CASE NO. | W03–66194 |
| DATE | 072803 |
| NAME | Edward Martin III |
| ADDRESS | 316 E. Mullan |
| TAKEN BY | Mark McKinley |
| DEVELOPED BY | |
| PRINTED BY | |
| REMARKS | Narcotics |

A

Inside the envelope is a paper sack containing a crack pipe. Martin's lawyer did not object to the envelope at trial. The jury later found Martin guilty.

Martin appealed. The court of appeals held Martin's trial counsel was ineffective for failing to object to the evidence tag. The court reasoned the writing on the envelope constituted unfair hearsay that was prejudicial to Martin's case.[1] We

---

1. The summer of 2003 was apparently a sticky one for Martin. The court of appeals

handed down two other decisions involving Martin on the same morning. Those appeals

granted the State's application for further review.

## II. Standard of Review

■ We review ineffective-assistance-of-counsel claims de novo. *See, e.g., State v. Philo*, 697 N.W.2d 481, 485 (Iowa 2005); *State v. Wills*, 696 N.W.2d 20, 22 (Iowa 2005); *State v. Doggett*, 687 N.W.2d 97, 99 (Iowa 2004).

## III. The Merits

### A. The Evidence Tag

■ We have long held it is error for the district court to allow the prosecution to submit evidence to the jury with statements written on attached evidence tags. *See, e.g., State v. Shultz*, 231 N.W.2d 585, 587 (Iowa 1975); *State v. Branch*, 222 N.W.2d 423, 426–27 (Iowa 1974); *see also State v. Gallup*, 500 N.W.2d 437, 440–41 (Iowa 1993) (finding error but concluding it was harmless). *But see State v. Christensen*, 205 Iowa 849, 851, 216 N.W. 710, 711 (1927) (finding "no error or prejudice" because court gave limiting instruction). Not only may evidence tags contain hearsay, but they can also unfairly emphasize the State's evidence. *Branch*, 222 N.W.2d at 426–27. "Once an exhibit has been received in evidence, no proper purpose exists for leaving attached to it an [evidence] tag which summarizes the State's testimony regarding the exhibit." *Shultz*, 231 N.W.2d at 587.

In *Branch*, we reversed a conviction for delivery of a controlled substance because an evidence tag contained a "neat condensation of the [State's] whole case against the defendant"—the name of the drug, the times and dates of the sale and the delivery, the name of the defendant, the purchase price, and the names of the police officers and special agent involved in the sting. 222 N.W.2d at 425–27. Likewise, in *Shultz* we reversed a conviction for breaking and entering because the tag contained a concise summary of the case—the place where the evidence was found, the date and time of its recovery, the defendant's name, the charge, the name of the victim, and the name of the officer who recovered the evidence. 231 N.W.2d at 587. In contrast, in *Gallup*, we held any error in submitting an evidence tag to the jury was harmless because the defendant, charged with delivery of a controlled substance, had admitted he had sold the drug to an undercover agent. 500 N.W.2d at 440–41.

On appeal, Martin contends his case is like *Branch* and *Shultz*, not *Gallup*, because unlike the defendant in *Gallup*, he never made an admission. The court of appeals agreed. Relying on *Branch*, the court presumed the evidence tag was prejudicial. The court held that Martin's trial counsel was ineffective in not objecting to the admission of the exhibit when it still had the property tag affixed to the outside envelope.

■ We find a critical distinction between the present case and *Branch*, *Shultz*, and *Gallup*. In those three cases, we analyzed whether the trial court had abused its discretion in overruling the defendant's objection to the admission of the property tag on the piece of evidence. *Gallup*, 500 N.W.2d at 440–41; *Shultz*, 231 N.W.2d at 587; *Branch*, 222 N.W.2d at

concerned unrelated arrests for cocaine possession in June and August 2003. As in the case at bar, in the other two appeals, Martin alleged his trial counsel was ineffective for failing to object to evidence tags. We decide another one of these appeals today. *See State v. Martin*, 704 N.W.2d 674 (Iowa 2005). In the third appeal, however, a different panel of the court of appeals did not presume prejudice. The panel instead applied ordinary ineffective-assistance-of-counsel standards and affirmed. Martin did not seek further review, so the third case is not before us.

426. In the present case, the trial court was not presented with the opportunity to rule on such an objection, and "[g]enerally, when a party makes no objection to the reception of evidence at trial, the matter will not be reviewed on appeal." *Wirtanen v. Provin*, 293 N.W.2d 252, 257 (Iowa 1980); *see also* Iowa R. Evid. 5.103(*a*) (stating "[e]rror may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected, and ... a timely objection or motion to strike appears of record"). Martin did not object to the envelope. Consequently, the trial court was not alerted to the issue so that the error could be avoided, and the state was not given the opportunity to remove the tag or establish that it was not prejudicial. We cannot, therefore, analyze whether the court abused its discretion in admitting the evidence. We must only analyze this case under ineffective-assistance-of-counsel principles. *See, e.g., State v. Brooks*, 540 N.W.2d 270, 273 (Iowa 1995) (requiring defendant to establish prejudice in case in which no objection was made to evidence tags at trial); *see also State v. Carberry*, 501 N.W.2d 473, 477 (Iowa 1993) ("Defendant urges ... all hearsay testimony is presumed to be prejudicial. The cases stating that proposition, however, involved alleged evidentiary error preserved by contemporaneous objection.").[2]

■■■■ To prove a claim of ineffective assistance of counsel, Martin must show by a preponderance of the evidence that his trial counsel (1) failed to perform an essential duty and (2) prejudice resulted. *Philo*,

697 N.W.2d at 485 (citations omitted); *accord Rompilla v. Beard*, —— U.S. ——, ——, 125 S.Ct. 2456, 2462, 162 L.Ed.2d 360, 377 (2005) ("Ineffective assistance ... is deficient performance by counsel resulting in prejudice. ..."). To prove prejudice on this test, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 694, 104 S.Ct. 2052, 2068, 80 L.Ed.2d 674, 698 (1984). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*

We will focus solely upon the second prong of this test because we find Martin cannot show prejudice. *See State v. Liddell*, 672 N.W.2d 805, 809 (Iowa 2003) (recognizing failure to prove either prong of test is fatal to ineffective-assistance-of-counsel claim). Although it contained hearsay, the particular tag in this case did not provide the jury with "a neat condensation of the [State's] whole case against the defendant." *Cf. Branch*, 222 N.W.2d at 427. Far from encapsulating the State's case against Martin, the information on the tag simply describes the chain of custody of the crack pipe. A closer inspection of the evidence tag bears this assertion out.

First, unlike the evidence tags in *Branch* and *Shultz*, the date on the tag in the case at bar does not match the date of the alleged offense. The alleged offense occurred on July 26; the evidence tag lists

**2.** The distinction between these methods of analysis is significant because "[t]he standard for reversible error is much different in cases involving alleged ineffective assistance of counsel." *Carberry*, 501 N.W.2d at 477. For example, a defendant who pursues an ineffective-assistance-of-counsel claim bears the burden of proof, not the State. *See State v. Shearon*, 660 N.W.2d 52, 55 (Iowa 2003).

Only when "assistance of counsel has been denied entirely or during a critical stage of the proceeding" should a court "forgo individual inquiry into whether counsel's inadequate performance undermined the reliability of the verdict" and presume prejudice. *Mickens v. Taylor*, 535 U.S. 162, 166, 122 S.Ct. 1237, 1241, 152 L.Ed.2d 291, 301 (2002). No such situation is implicated here.

July 28. At trial, the supervisor of the Waterloo crime lab explained the discrepancy: the date on the tag was the date the crime lab investigators prepared the crack pipe for shipment to the state crime lab in Des Moines. Second, the officer listed on the tag was not one of the arresting officers, but rather—as other evidence presented to the jury makes clear [3]—the case officer assigned to handle the crack pipe. Third, the crime lab supervisor testified that the case number was the agency number the Waterloo police department used to keep track of the crack pipe. Fourth, the address listed on the evidence tag is not the location of Martin's arrest, but rather his residence. Fifth, the tag, as well as the inner paper sack, contains a number of other identifying numbers, dates, and initials, as well as bright red crime lab tape. Taken together, this jumble of information provides the chain of custody for the crack pipe—showing who opened the bags and when they did so. Viewed in context, the evidence tag simply encapsulates the chain of custody of the crack pipe, not the State's case.[4] *Cf. State v. Reese,* 259 N.W.2d 771, 776–77 (Iowa 1977) (finding tags did not summarize State's case).

In light of the foregoing, Martin's allegations of the prejudicial effect on the jury are purely speculative. It is important to recognize the State's evidence against Martin was particularly strong in this case: the police found a crack pipe containing cocaine in Martin's pocket. This is a very good indication Martin knowingly possessed cocaine, a conclusion Martin's demeanor and furtive movements

buttress. It is thus improbable that admission of the tag affected the outcome of Martin's trial. Because "defects in assistance that have no probable effect upon the trial's outcome do not establish a constitutional violation," *see Mickens,* 535 U.S. at 166, 122 S.Ct. at 1240, 152 L.Ed.2d at 300, Martin did not suffer prejudice when the evidence tag made its way to the jury. His ineffective-assistance-of-counsel claim fails.

### B. Iowa Rule of Evidence 5.403

Because the court of appeals reversed on the evidence-tag issue, it did not discuss another evidentiary claim Martin raised. In what follows, we find it was error to allow an officer to testify that Martin was "known to be violent" at the time of his arrest. We affirm, however, because we conclude the error in admitting the officer's testimony was harmless.

### 1. Background

Before trial, Martin's attorney made an oral motion in limine to exclude any reference to Martin's prior convictions or bad acts. These apparently included a conviction for assault on a police officer and a robbery arrest. Martin's attorney also asked the court to shield the jury from the fact that Martin was suspected of pimping when the police stopped him. The district court sustained Martin's motion in its entirety. The court warned defense counsel, however, that if he suggested the pat-down was inappropriate, the State would be allowed to introduce evidence to show the officer was justified in patting Martin

---

3. Much of the complained-of hearsay on the tag, such as the case number and the officer, is also found on Exhibit B, a laboratory receipt. In addition, Exhibit C, a laboratory report, indicated the substance in the crack pipe was a narcotic. This hearsay is thus cumulative to boot, minimizing its prejudicial impact.

4. If Martin had made chain of custody a direct issue in the case, for example, if he had challenged the integrity of the procedures surrounding the chemical testing process, then the tag may have had a more prejudicial effect on the defendant's case.

down. The parties agreed to abide by the judge's ruling.

Pursuant to the parties' agreement, on direct examination, the officer vaguely testified he stopped Martin after receiving a report of "some criminal activity" in the area. The officer then testified he patted down Martin because (1) it was something he regularly did and (2) Martin was wearing baggy clothing, which is sometimes used to conceal weapons.

On cross-examination, Martin's attorney—plainly in derogation of the parties' agreement—asked the officer why he thought Martin might have a weapon. The officer repeated his prior testimony.

Once she was outside the jury's presence, the prosecutor asked the court to allow the officer to testify fully about his reasons for patting down Martin. The court ruled:

> I had previously notified the defense that if the defense ... suggested ... the officer was overreaching in patting Mr. Martin down, that I was going to allow the State to ask the witness to explain why that was taking place so that there is a factual basis for the officer's conduct. So I don't want to belabor this. We spent a lot of time with it. But I think at this point I'm going to allow the State to go into why [the officer was] patting Mr. Martin down for weapons.

When the officer's testimony was introduced, the defendant objected. He argued the probative value of the evidence was substantially outweighed by the danger of unfair prejudice.[5] *See* Iowa R. Evid. 5.403.

The trial court overruled the objection. The officer testified he patted down Martin because Martin had been "arrested for robberies," "arrested for assault on a police officer," and was "known to be violent." *Sua sponte,* the court immediately cautioned the jury that the officer's testimony was "not offered for the truth of the matter" but "only offered for the purpose of showing why this witness took the action that he did in patting down the defendant." Later in the trial, the court, at the defendant's urging, also reminded the jury that Martin had not been *convicted* of robbery, only *arrested.*

## 2. The Merits

■■■ Martin argues the district court abused its discretion in allowing evidence of his prior robbery arrests and the description of him as violent. Martin contends the danger of unfair prejudice substantially outweighed the testimony's probative value.[6] Our review is for an abuse of discretion. *See, e.g., State v. Sallis,* 574 N.W.2d 15, 16 (Iowa 1998); *see also State v. Henderson,* 696 N.W.2d 5, 10 (2005) (reviewing trial court's ruling on the admission of evidence of prior bad acts for an abuse of discretion).

■■■ The Iowa Rules of Evidence provide that "evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice...." Iowa R. Evid. 5.403. "Probative value" measures "the strength and force of the evidence to make a consequential fact more or less probable." *State v. Rodriquez,* 636 N.W.2d 234, 240 (Iowa 2001)

---

5. In truth, the defendant only said "Objection, Your Honor, 403" which is a term of art well encompassing this balancing test.

6. On appeal, Martin also claims this evidence was inadmissible under rule 5.404. In addition, he argues his trial counsel was ineffective for not putting his objections in writing before trial. *See* Iowa R.Crim. P. 2.11(4) ("Motions in limine shall be filed when grounds therefore reasonably appear but no later than nine days before the trial date."). Because we find the district court abused its discretion in admitting the evidence, we do not reach these issues.

(citations and internal quotation marks omitted). "Unfairly prejudicial evidence," on the other hand,

> appeals to the jury's sympathies, arouses its sense of horror, provokes its instinct to punish, or triggers other mainsprings of human action that may cause a jury to base its decision on something other than the established propositions in the case.

*Id.* In other words, when presented with a rule 5.403 objection, the trial judge must decide "whether the minute peg of relevancy will be entirely obscured by the dirty linen hung upon it." *State v. Wright,* 203 N.W.2d 247, 251 (Iowa 1972) (citation and internal quotation marks omitted).

■ In weighing probative value and unfair prejudice, we consider (1) the need for the proffered evidence "in view of the issues and other available evidence," (2) whether there is clear proof it occurred, (3) the "strength or weakness of the prior-acts evidence in supporting the issue sought to be prove[d]," and (4) the degree to which the evidence would improperly influence the jury. *See Henderson,* 696 N.W.2d at 11. In this case, the first and fourth factors weigh heavily against admission of the evidence.

The first factor weighs especially heavily against admission of the evidence. The need for Martin's prior robbery arrests and known violent tendencies was very weak in light of the primary issues in this case. It is true Martin's propensity for violence makes it more probable the officer had a good reason to pat him down. It is not enough, however, that evidence makes some fact more probable to be admissible at trial; evidence is relevant only if it makes a "fact of consequence to the determination of the action" more probable. *See* Iowa R. Evid. 5.401. The district court assumed, without elaboration, that the officer's decision to pat down Martin was a "fact of consequence to the determi-

nation of the action." Nonetheless, it is unclear whether the fact the officer had a good reason to pat down Martin is a fact of consequence in Martin's trial for possession of cocaine. On appeal, the State argues the prosecution should be permitted to "complete the story of [the] crime" and explain the officer's "responsive action." We need not decide this issue. Even assuming the officer's reasons for conducting the pat-down are somehow relevant, any relevance was minimal. The jury's primary undertaking, if not sole task, was to decide whether Martin knowingly possessed cocaine, not whether his Fourth Amendment rights were violated. The need for the proffered evidence was therefore weak because the fact it tended to prove—that the officer had a good reason for patting Martin down—was not a primary issue in the case, if an issue at all.

In addition, the need for the proffered evidence was weak in light of the other available evidence. It was not the case that the officer had no explanation for his actions. The officer had already testified about two other valid, nonprejudicial reasons he had for conducting the pat-down: (1) this was something he regularly did and (2) Martin was wearing baggy clothing, which is sometimes used to conceal weapons. *Cf. Henderson,* 696 N.W.2d at 11 (need for prior acts evidence was "marginal at best" because there was abundant nonprejudicial evidence in the record to show the same). At most, the court could have allowed the officer to come back to testify that he patted Martin down for his (the officer's) own safety, but there was certainly no need to introduce evidence of one—let alone two—prior arrests.

The fourth factor also weighed against admission of the evidence in this case. The evidence of Martin's violent nature could only serve to inflame the passions of the jury. Although not terribly inflammatory or prejudicial, the probative force of

the proffered evidence was so attenuated to a primary issue in the case that its deleterious effect clearly substantially outweighed whatever minimal relevance it had.

In sum, we conclude the district court should have excluded the officer's testimony about Martin's prior arrests and violent tendencies. Even though the court warned Martin's counsel that if he made "any suggestion ... that having Mr. Martin patted down was overhanded or heavy hands or inappropriate ... then [the court would] let the State go into the reasons why," this did not circumvent the court's duty to perform a rule 5.403 balancing test once the objection was properly made. We recognize our standard of review affords the district court wide latitude in evidentiary matters, *see Sallis*, 574 N.W.2d at 16, but simply asking why the officer searched the defendant did not allow the State to throw every possible reason to the jury.

### 3. Harmless Error

█ Having ruled it was error to admit the officer's testimony, we must now decide whether this error requires us to reverse Martin's conviction. *See Henderson*, 696 N.W.2d at 12. We conclude it does not.

█ "In cases of nonconstitutional error, reversal is required if it appears the complaining party has suffered a miscarriage of justice or his rights have been injuriously affected." *Moorehead*, 699 N.W.2d at 672. Unless the record affirmatively establishes otherwise, prejudice is presumed. *Id.*

Several factors affirmatively establish that Martin was not prejudiced. First, the trial judge immediately gave the jury a limiting instruction. We have often recognized the importance limiting instructions have in minimizing prejudice. *See, e.g., State v. Price*, 692 N.W.2d 1, 5 (Iowa

2005); *State v. Conner*, 314 N.W.2d 427, 429 (Iowa 1982); *Christensen*, 205 Iowa at 851, 216 N.W. at 711; *see also State v. Plaster*, 424 N.W.2d 226, 232 (Iowa 1988) ("It is only in extreme cases that [a limiting] instruction is deemed insufficient to nullify the danger of unfair prejudice."). Second, unlike many other cases, here the alleged bad acts—alleged violent tendencies and arrests for robbery and assault—are so unrelated to the charge at hand that they do not tend to show conforming conduct. While matters might very well be different had the erroneously admitted evidence concerned prior arrests for drug possession, here the crimes are of a different species. Because the crimes are so unrelated, there is little danger that one would assume that since Martin "did it before he probably did it again." *Henderson*, 696 N.W.2d at 12 (citation and internal quotation marks omitted); *see also id.* at 14 (Lavorato, C.J., specially concurring) (rule against bad-acts evidence furthers its policy justifications "especially ... when *similar* bad-acts evidence is introduced" (emphasis in original)). Third, as discussed earlier, the evidence of Martin's guilt in this case was overwhelming—a crack pipe containing cocaine was found in Martin's pocket. Any error in admitting the officer's testimony was harmless.

### IV. Conclusion

We vacate the decision of the court of appeals and affirm the district court. Martin cannot show prejudice from his attorney's failure to object to admission of the evidence tag or from the officer's testimony about his propensity for violence.

**DECISION OF COURT OF APPEALS VACATED; DISTRICT COURT JUDGMENT AFFIRMED.**