DA 11-0645

IN THE SUPREME COURT OF THE STATE OF MONTANA

2012 MT 303

STATE OF MONTANA,

       Plaintiff and Appellee,

  v.

STUART LAURENCE LOZON, JR.,

       Defendant and Appellant.

APPEAL FROM:    District Court of the Twenty-First Judicial District,
In and For the County of Ravalli, Cause No. DC 2011-37
Honorable James A. Haynes, Presiding Judge

COUNSEL OF RECORD:

       For Appellant:

           Wade Zolynski, Chief Appellate Defender; Lisa S. Korchinski, Assistant
Appellate Defender; Helena, Montana

       For Appellee:

           Steve Bullock, Montana Attorney General; Kathryn F. Schulz, Assistant
Attorney General; Helena, Montana

           Karen Mahar, Hamilton City Attorney; Jennifer Lint, Assistant City
Attorney; Hamilton, Montana

Submitted on Briefs:  September 19, 2012

Decided:  December 21, 2012

Filed:

_____
Clerk

Justice Jim Rice delivered the Opinion of the Court.

¶1      A jury convicted Stuart Laurence Lozon, Jr. (Lozon) of driving under the influence in the Twenty-First Judicial District Court.  Lozon argues his conviction should be reversed because the District Court admitted the video of the Preliminary Alcohol Screening Test administration without sound over Lozon's objection.  We reverse.

¶2      We consider the following issue on appeal:

¶3      *Did the District Court abuse its discretion by partially denying Lozon's motion in limine to exclude video footage depicting administration of the PAST?*

## FACTUAL AND PROCEDURAL BACKGROUND

¶4      On July 6, 2010, Lozon was stopped by Officer Reichert after failing to stop at a stop sign in Hamilton.  After noting that Lozon's movements were labored and he had glassy and bloodshot eyes, Officer Reichert asked Lozon if he had been drinking.  Lozon stated he had two-and-a-half beers earlier in the evening.  Officer Reichert asked Lozon to perform several standardized field sobriety tests, including the horizontal gaze nystagmus, which Lozon failed.  Lozon agreed to perform the Preliminary Alcohol Screening Test (PAST)[1] and he registered a blood alcohol level of .153.  Officer Reichert arrested Lozon and transported him to the Ravalli County Detention Center where Lozon refused to perform additional field sobriety tests and would not provide an Intoxilyzer

---

[1] This Court's previous decisions involving field breathalyzer tests have used PAST and preliminary breath test (PBT) interchangeably.  For consistency, we will use PAST here.

8000 breath sample. Lozon was charged with driving under the influence (DUI) in violation of § 61-8-401, MCA (2009).

¶5    A jury found Lozon guilty of DUI in Hamilton City Court in March 2011. Lozon appealed to the Twenty-First Judicial District Court, Ravalli County, and a new trial was scheduled for August 2011. Before trial, Lozon filed a motion in limine requesting the court to redact all portions of the in-car or "field" video during which the PAST and the horizontal gaze nystagmus test were administered or discussed. Lozon also requested the court to redact a portion of the jail video in which Lozon refers to his PAST results. The State, through the City of Hamilton (State), opposed the motion. The District Court granted the motion to redact all footage of the administration and discussion of the horizontal gaze nystagmus and all references to the PAST results, but denied the request to redact all video footage of the administration of the PAST.

¶6    At the District Court trial, Officer Reichert testified, describing his professional training and experience. He explained generally the administration of the walk-and-turn and the one-leg stand, two standardized field sobriety tests. Officer Reichert then testified that Lozon's performance on both of these standardized field sobriety tests indicated impairment. No expert testimony about the PAST was offered. The in-car video was then played for the jury. The video showed Lozon performing the standardized field sobriety tests. The State switched to a blank screen during the horizontal gaze nystagmus portion of the video. The sound was muted during the portion of the video showing Officer Reichert administering the PAST. After the PAST was

3

administered, the video depicted the results being shown to Lozon. He was told to sit on the bumper of the police cruiser and shortly afterwards was placed under arrest. The PAST results were not revealed to the jury.

¶7 During deliberations, the jury sent a question to the court asking, "[c]an we know the results of the field breathalyzer? Why/why not?" The court responded in writing: "No. The Montana Supreme Court generally limits the use of PAST ("field breathalyzer") results to an estimation of a person's alcohol concentration for purposes of establishing probable cause." The jury found Lozon guilty of DUI.

¶8 Lozon appeals the District Court's partial denial of his motion in limine to exclude the video of the PAST administration, which was played without sound.

**STANDARD OF REVIEW**

¶9 A district court's ruling on a motion in limine is an evidentiary ruling and the district court has broad discretion in determining whether evidence is relevant and admissible. *State v. Weldele*, 2003 MT 117, ¶ 41, 315 Mont. 452, 69 P.3d 1162. "[I]t is within the district court's sound discretion to determine whether an adequate foundation has been established to warrant admissibility of evidence." *Weldele*, ¶ 43 (citing *State v. Delaney*, 1999 MT 317, ¶ 14, 297 Mont. 263, 991 P.2d 461). We will not disturb a district court's determination on the admissibility of evidence absent an abuse of discretion. *State v. Snell*, 2004 MT 334, ¶ 17, 324 Mont. 173, 103 P.3d 503. "Abuse of discretion occurs if a district court acts arbitrarily without conscientious judgment or

4

exceeds the bounds of reason, resulting in substantial injustice." *State v. Rodriguez*, 2011 MT 36, ¶ 12, 359 Mont. 281, 248 P.3d 850 (citations omitted).

## DISCUSSION

¶10 *Did the District Court abuse its discretion by partially denying Lozon's motion in limine to exclude video footage depicting administration of the PAST?*

¶11 Lozon notes that PAST results are not admissible as substantive evidence unless the State presents testimony that establishes PAST accuracy and reliability under M. R. Evid. 702. Lozon argues that the video of the PAST administration, played without sound, was used as substantive evidence because "it proved the element that Lozon was 'under the influence'" and permitted the jury to infer that Lozon was above the legal limit when he was arrested shortly afterwards. He argues that the State "did not provide the requisite evidence to establish PAST reliability and accuracy, therefore the district court abused its discretion when it admitted the PAST video."

¶12 The State responds that the "video evidence at issue here is not evidence of a PAST *result*" and "[e]xpert testimony is not required to admit Lozon's on-screen video depicting real-time interactions with an investigating officer." (Emphasis in original.) The State contends that the District Court "did not abuse its discretion in allowing the jury to view relevant video footage of Reichert's total DUI field investigation that included administration of the PAST."

5

¶13 The admission of audio-visual evidence is generally within the district court's discretion. *City of Missoula v. Forest*, 236 Mont. 129, 134-36, 769 P.2d 699 (1989) (citing *State v. Warwick*, 158 Mont. 531, 494 P.2d 627 (1972)). Audio-video evidence is generally admissible to assist the trier of fact because it demonstrates the person's mannerisms, including speech and performance on sobriety tests. *State v. Thompson*, 237 Mont. 384, 386-87, 773 P.2d 722, 723-24 (1989); *see also State v. Devlin*, 1999 MT 90, ¶¶ 10, 21, 294 Mont. 215, 980 P.2d 1037.

¶14 PAST results may be introduced to establish probable cause for arrest. *Weldele*, ¶ 50. "Before a [PAST] result may be admitted as substantive evidence, however, a court must conduct a conventional Rule 702, M. R. Evid., analysis and the test result must be demonstrably accurate and reliable and meet all other admissibility requirements." *State v. Damon*, 2005 MT 218, ¶ 25, 328 Mont. 276, 119 P.3d 1194 (citing *Weldele*, ¶ 57). In *Weldele*, we noted that:

> [PASTs] are qualitatively different from [other standardized] field [sobriety] tests, which call for a subjective analysis of a person's behavior. A [PAST] utilizes a scientific instrument to test a person's chemistry. In this scientific age, it is indisputable that, fairly or not, the result of a [PAST], given its scientific nature, will be weighed heavily by a jury and will likely be accorded more weight than the other field tests. We conclude, therefore, that our many concerns pertaining to the [PAST], *i.e.*, its unreliability, lack of regulation and potentially inappropriate evidentiary weight, are not addressed or cured by admitting the [PAST] result into evidence in conjunction with the arresting officer's observations and field sobriety test results.

*Weldele*, ¶ 55. This reasoning invokes M. R. Evid. 403, which provides: "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by

the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."

¶15 Although Lozon's blood alcohol content level from the PAST was not revealed to the jury, we agree with Lozon that the evidence prompted a jury inference that he had failed the PAST. The video of the PAST administration, followed closely by Lozon's arrest, raised a compelling inference that he was over the legal blood alcohol limit. Thus, the video was impermissibly used as substantive evidence of Lozon's intoxication without the State satisfying the requirement of *Damon* and M. R. Evid. 702 to call an expert to testify regarding the reliability and accuracy of the PAST. Further, as we cautioned in *Weldele*, it is likely that the jury placed inappropriate weight on the fact that Lozon was arrested following the PAST and concluded therefrom that Lozon was over the legal limit. During deliberations, the jury asked if it could be given the result of Lozon's PAST and, if not, asked the reason this information would be withheld. While the video was relevant to the State's case, the potential for unfair prejudice by that portion of the video showing the PAST administration followed almost immediately by Lozon's arrest outweighed its probative value.

¶16 The State does not argue harmless error, but Lozon wisely does, and we believe this issue should be addressed, in light of our precedent. In both *Weldele* and *State v. Crawford*, 2003 MT 118, 315 Mont. 480, 68 P.3d 848, we considered whether the erroneous admission of PAST or PBT evidence was harmless under *State v. Van Kirk*,

7

2001 MT 184, 306 Mont. 215, 32 P.3d 735. *Weldele*, ¶ 59; *Crawford*, ¶¶ 14, 19. Under *Van Kirk*, we first determine whether the error was "structural" or "trial" error. *Van Kirk*, ¶ 37. Here, the error occurred when the jury viewed the video during trial, which constitutes trial error, as we also determined in *Weldele* and *Crawford*. *Weldele*, ¶ 61; *Crawford*, ¶ 19. Then, to determine whether the erroneous admission of evidence prejudiced the defendant's right to a fair trial, "we apply the 'cumulative evidence test' which determines whether the fact-finder was presented with admissible evidence that proved the same facts as the tainted evidence proved." *Snell*, ¶ 40 (citing *Van Kirk*, ¶ 43). "Moreover, the State must also demonstrate that the *quality* of the tainted evidence was such that there was no reasonable possibility that it might have contributed to the defendant's conviction." *Van Kirk*, ¶ 44 (emphasis in original). The State bears the burden of "demonstrat[ing] that the error at issue was not prejudicial." *Van Kirk*, ¶ 42.

¶17 We concluded that the error was harmless and non-prejudicial in *Weldele*, ¶ 63, but that the error was prejudicial and therefore reversible in *Crawford*, ¶ 22. In *Weldele*, the State also introduced the arresting officer's field observations, the results of the defendant's standardized field sobriety tests, and the defendant's Intoxilyzer results to prove the element of intoxication for DUI. *Weldele*, ¶ 63. We found that the Intoxilyzer results independently established the element of intoxication and the erroneously admitted PAST results were non-prejudicial and harmless. *Weldele*, ¶ 63. In *Crawford*, the defendant refused to provide an Intoxilyzer sample and we held that the erroneous admission of the PAST evidence was prejudicial despite the State's introduction of the

8

arresting officer's field observations, the results from the defendant's standardized field sobriety tests, and the defendant's admission he had been drinking. *Crawford*, ¶¶ 19-20, 22. The State could not demonstrate "that the tainted evidence would not have contributed to Crawford's conviction," and thus the error required reversal. *Crawford*, ¶ 22.

¶18 Here, as noted above, the State's presentation of the PAST evidence improperly became substantive evidence of the intoxication element of driving under the influence, and the State must demonstrate that, qualitatively, the tainted evidence of the PAST would not have contributed to the conviction. In addition to the portions of the video properly admitted, the State notes it introduced Officer Reichert's testimony about Lozon's driving errors and his physical condition, the standardized field sobriety test results, Lozon's admission he had been drinking, and his refusal to provide a later breath sample. This refusal left the State without Intoxilyzer results.

¶19 The error that resulted here was the prompting of the inference that Lozon had failed the PAST. While the other evidence introduced by the State may have cumulatively and conclusively proven the element of intoxication necessary to support a DUI conviction, it did not constitute "admissible evidence that proved the same facts as the tainted evidence." *Van Kirk*, ¶ 44; *see also Weldele*, ¶ 63. Further, we conclude that the State has not "demonstrate[d] that the *quality* of the tainted evidence was such that there was no reasonable possibility that it might have contributed to the defendant's

conviction." *Van Kirk*, ¶ 44 (emphasis in original). Therefore, the admission of the PAST evidence by video was prejudicial error.

¶20   Reversed.


/S/ JIM RICE


We concur:


/S/ PATRICIA COTTER
/S/ MICHAEL E WHEAT
/S/ BRIAN MORRIS
/S/ BETH BAKER


Justice Patricia O. Cotter concurs.

¶21   I concur in the Court's Opinion. I write separately in response to the Court's discussion at ¶ 14 to reassert my objection to the introduction of PAST results as substantive evidence of guilt under *any* circumstances. *State v. Damon*, 2005 MT 218, 328 Mont. 276, 119 P.3d 1194 (Cotter, J., dissenting).


/S/ PATRICIA COTTER