# IN THE SUPREME COURT OF IOWA

No. 22–0624

Submitted October 10, 2023—Filed November 17, 2023

**STATE OF IOWA,**

Appellee,

vs.

**BITA AMISI,**

Appellant.

---

On review from the Iowa Court of Appeals.

Appeal from the Iowa District Court for Polk County, Celene Gogerty, Judge.

A defendant convicted of operating while intoxicated third offense and eluding appeals his convictions, arguing that the district court abused its discretion in admitting evidence about a preliminary breath test and that the evidence was insufficient. **DECISION OF COURT OF APPEALS AND DISTRICT COURT JUDGMENT AFFIRMED.**

Mansfield, J., delivered the opinion of the court, in which Waterman, Oxley, and McDermott, JJ., joined. McDonald, J., filed a special concurrence, in which Christensen, C.J., and May, J., joined.

Jamie Hunter of Dickey, Campbell & Sahag Law Firm, P.L.C., Des Moines, for appellant.

Brenna Bird, Attorney General, and Bridget A. Chambers, Assistant Attorney General, for appellee.

**MANSFIELD, Justice.**

### I. Introduction.

"[M]en may construe things after their fashion," says Cicero in Shakespeare's *Julius Caesar*. William Shakespeare, *Julius Caesar* act 1, sc. 3, l. 34. Jurors, however, are supposed to construe the facts according to what they see in the courtroom. A recurring problem arises, therefore, when the courtroom evidence allows the jury to draw an impermissible inference.

Iowa law provides that the results of a preliminary breath test (PBT) are not generally admissible in an operating while intoxicated (OWI) prosecution. Iowa Code § 321J.5(2) (2021). Technically, that line was not crossed in this jury trial. However, over the defendant's objection, the district court did admit a portion of an officer bodycam video showing the defendant agreeing to a PBT. The edited video then jumped immediately to the defendant's OWI arrest.

We conclude that this juxtaposition of the PBT and arrest violated Iowa Rule of Evidence 5.403 because it had minimal probative value while strongly implying to the jury that the defendant had failed the PBT. But given the overwhelming evidence from other sources that the defendant had been driving while under the influence, we find the evidentiary error harmless. We also find sufficient evidence to sustain the defendant's eluding conviction. Therefore, we affirm the defendant's convictions and sentence.

### II. Background Facts and Proceedings.

On August 23, 2021, Officer Angel Perez was patrolling in a residential area of Des Moines. It was approximately 7:37 p.m. and still light outside when Officer Perez observed a car ahead of him swerve into the oncoming lane of traffic of the two-lane road. He activated the red and blue emergency lights of his marked police vehicle and pulled behind the car, which continued to veer back and forth dangerously between the two lanes. After approximately forty-five

seconds of pursuit with his emergency lights activated, the vehicle still had not stopped. Officer Perez turned on his sirens, at which point the car noticeably accelerated and drove in the wrong (lefthand) lane for approximately fifteen seconds before slowing down and ultimately pulling into an apartment complex parking lot.

In the parking lot, the driver struggled to park his car, initially hitting the curb, then backing up too far to correct. At this point, Officer Perez exited his squad car and verbally ordered the driver to stop and get out of the vehicle. All of these events were recorded on Officer Perez's dashcam video, which was admitted at trial.

When the driver exited his car, Officer Perez observed that he "had unsteady balance; bloodshot, watery eyes; and alcohol on his breath." Officer Perez also saw an open container of an alcoholic beverage inside the vehicle. He placed the driver, Bita Amisi, in the back of his squad car.

A second officer, Officer James Chadwick, arrived at the scene to perform an OWI investigation. He conducted a series of field sobriety tests on Amisi. Officer Chadwick attempted three times to administer the horizontal-gaze nystagmus test. Amisi, however, failed to hold his head still, preventing the proper administration of that test. Officer Chadwick marked that down as a refusal. Amisi then took and failed two more tests—the walk-and-turn and the one-leg stand. Officer Chadwick's bodycam video showing Amisi's performance on these field sobriety tests was admitted at trial.

Officer Chadwick then offered a PBT to Amisi. The bodycam video shows Officer Chadwick asking,

> So, the last test I'm asking you to do is called a preliminary breath test. It's where you blow into a machine. It's not admissible in court. It kind of lets us know how much you've had to drink. Would you like to take that test?

Amisi agreed.

As admitted at trial, the bodycam video jumped from Amisi's consent to taking the PBT to Officer Chadwick placing Amisi in handcuffs and saying, "Right now you are placed under arrest for operating a motor vehicle while intoxicated, OWI."

Amisi was transported to the police station. At the station, Amisi first told Officer Chadwick he was "begging" him to take him home. Officer Chadwick declined and instead brought Amisi inside the station. There he went through the implied consent procedure. Amisi was uncooperative, speaking over the officer at times and stating repeatedly that he "wasn't driving." Amisi verbally refused to take the chemical test and signed the form acknowledging that he declined to provide a breath sample.

On September 1, the State charged Amisi by trial information with OWI third offense, a class "D" felony, and eluding, a serious misdemeanor. Iowa Code § 321J.2(1)(*a*), (2)(*c*); *id.* § 321.279(1)(*a*). Prior to trial, Amisi's counsel objected to the State's plan to introduce into evidence the portion of the bodycam video showing Officer Chadwick asking Amisi if he would take a PBT and Amisi agreeing. The actual administration of the PBT and the results were redacted. Counsel explained his objection as follows:

> MR. McCORMACK: Your Honor, the objection is to a portion of Exhibit 4, which references -- which features Officer, I believe, Chadwick offering my client the preliminary breath test.
>
> . . . .
>
> It features him offering the PBT to my client, my client accepting, and then it cuts the testing process out, and cuts straight to him being arrested.
>
> THE COURT: What exactly is the objection to that, just for the record, sir?

MR. McCORMACK: I believe it's in violation of the statute regarding the introduction of evidence of the PBT. And even if it's not, I would argue it's more prejudicial than probative, as the only real inference the jury can draw from the way it's presented is that he failed the PBT.

The district court overruled Amisi's objection, stating that "the fact a PBT was administered is not barred from evidence . . . [a]s long as the PBT results are not put into evidence."

Before Officer Chadwick took the stand, the district court allowed Amisi's counsel to make a record that he continued to object to the portion of the video being played that showed Amisi consenting to the PBT just before being arrested. After this objection was overruled, the video was played while Officer Chadwick gave the following narration:

Q. Did you offer the defendant any other test?

A. Yes, I did.

Q. Can you tell us what that test is? A. Called a preliminary breath test.

Q. And what is the purpose of administering this test?

A. Just measures the breath alcohol content in the breath at that time.

Q. And when offered this test, did the defendant consent?

A. Yes, he did.

Q. And at this point in the investigation, what did you decide to do?

A. At this point, I placed the defendant under arrest for operating a motor vehicle while intoxicated.

The jury found Amisi guilty of OWI and eluding. In a separate enhancement trial, the State proved that Amisi had received two prior OWI convictions, and he was convicted of OWI third offense. On March 25, 2022, Amisi was sentenced to serve consecutive sentences of incarceration not to

exceed five years for OWI third offense and one year for eluding. Iowa Code § 321J.2(5)(a); *id.* § 903.1(1)(*b*). Amisi timely appealed. We transferred the case to the court of appeals.

The court of appeals panel affirmed Amisi's convictions and sentence. Citing its own decision of *Gavlock v. Coleman,* 493 N.W.2d 94, 96 (Iowa Ct. App. 1992), the court reasoned that "[e]vidence that a defendant agreed to take a PBT is admissible when there is no reference to the results of the test." The court also found no rule 5.403 violation. In the court of appeals' view, the bodycam video had probative value because it showed Amisi's "speech and physical manifestations of intoxication during the process of obtaining his consent." Without elaboration, the court added that "the danger of unfair prejudice was very low." Lastly, the court found sufficient evidence to sustain Amisi's OWI and eluding convictions.

We granted Amisi's application for further review.

**III. Standard of Review.**

We review the district court's decision to admit the video under a mixed standard of review. Amisi challenges the district court's interpretation of Iowa Code section 321J.5(2). When the issue raised is one of statutory interpretation, "[o]ur review is . . . for correction of errors at law." *State v. Ness,* 907 N.W.2d 484, 487 (Iowa 2018) (quoting *State v. Albrecht,* 657 N.W.2d 474, 479 (Iowa 2003)). Amisi alternatively challenges the ruling on the basis that the video was inadmissible under Iowa Rule of Evidence 5.403. "Our review . . . under rule 5.403 is for an abuse of discretion." *State v. Lacey,* 968 N.W.2d 792, 807 (Iowa 2021). "However, we will not overturn a conviction for an error in the receipt of evidence if the error was harmless." *Ness,* 907 N.W.2d at 487.

**IV. Legal Analysis.**

**A. Admission of PBT Evidence.** In Iowa, peace officers are permitted to administer a PBT if they have reasonable grounds to believe that a motor vehicle operator is operating "[w]hile under the influence of an alcoholic beverage or other drug or a combination of such substances," "[w]hile having an alcohol concentration of .08 or more," or "[w]hile any amount of a controlled substance is present in the person, as measured in the person's blood or urine." Iowa Code §§ 321J.2(1), .5. The PBT is one gateway—presumably the most common gateway—to the implied consent procedure. *See id.* § 321J.6(1).

But the results of the PBT are generally inadmissible:

> The results of this preliminary screening test may be used for the purpose of deciding whether an arrest should be made or whether to request a chemical test authorized in this chapter, but shall not be used in any court action except to prove that a chemical test was properly requested of a person pursuant to this chapter.

*Id.* § 321J.5(2).

"Because of the PBT's unreliability, 'the legislature chose to make the "results" inadmissible in evidence.' " *Albrecht*, 657 N.W.2d at 479 (quoting *State v. Deshaw*, 404 N.W.2d 156, 158 (Iowa 1987)). We have held that the term "result" is not limited to an actual numeric result, but also includes the mere fact that the defendant passed or failed the PBT. *Deshaw*, 404 N.W.2d at 158. That is, "the showing of positive on the test, indicating the presence of some alcohol, is a 'result' of the testing which may not be used as evidence in court." *Id.*; *see also Massengale v. State*, 894 S.W.2d 594, 595–96 (Ark. 1995) (concluding that evidence the defendant had an "unsatisfactory" result on a PBT was inadmissible, although finding the error harmless).

Here, the State argues that Iowa Code section 321J.5(2) was not violated because no test results of any kind were actually admitted. Amisi counters that

the spliced video showing him being asked and agreeing to take the PBT and then being promptly arrested effectively *told* the jury that he had failed the test. His position is that the statute precludes both direct and circumstantial evidence of the PBT test results.

The district court and the court of appeals relied on an earlier court of appeals decision in upholding the State's position. *Gavlock*, 493 N.W.2d 94. *Gavlock* was a civil case. *Id.* at 96. The defendant's vehicle had crossed the center line and collided head-on with the plaintiff's vehicle, inflicting various injuries on the plaintiff. *Id.* at 95–96. At trial, a police officer was allowed to testify over objection that he administered a PBT at the scene to the defendant. *Id.* at 96. There was other compelling evidence of the defendant's intoxication. *Id.* at 96–97. The court of appeals briefly observed that "this ruling was proper because the statement made no reference to the results of the P.B.T." *Id.* at 96.

Another relevant precedent is *State v. Zell*, 491 N.W.2d 196 (Iowa Ct. App. 1992). The first issue on appeal centered on the following exchange between the prosecutor and the arresting officer:

> Q. Okay. What did you do next? A. I believe I waited until the dispatcher from Decorah gave me the driver's license information on Mr. Zell and it came back that he did in fact have a valid driver's license Iowa.
>
> Because of Mr. Zell's speech being slurred, my observation of his balance not being what I thought it should be, the fact that he admitted to me he had been drinking, I asked Mr. Zell if he would take an alco-sensor test or a preliminary breath test.
>
> Q. And what was the result of the-well, what happened-what was the result of the preliminary breath test? A. When I first asked Mr. Zell if he would take the test, I noted a quote from him was he asked me "What's the use. I am over."
>
> Q. Okay. I probably shouldn't ask the result of the preliminary breath test because I could get in trouble for asking that but let me ask [--] After he gave the preliminary breath test, what happened next?

*Id.* at 197.

At this point, defense counsel moved for a mistrial "because of the mention of the preliminary breath test." *Id.* The district court overruled the motion but gave the following cautionary instruction: "Ladies and Gentlemen, there was some reference to a preliminary breath test. That is not to be considered by you for any purpose whatsoever and please disregard any reference to that." *Id.*

On appeal, the court of appeals concluded that it "need not decide" whether "the prosecutor stepped over the line." *Id.* at 198. Instead, it held, "Given the fact the exact results of the test were not admitted, and the fact the trial court instructed the jury to disregard any reference to the preliminary breath test, we do not find the trial court abused its discretion in not granting a mistrial." *Id.*

While *Gavlock* and *Zell* are the latest words from our courts in a reported decision, the North Dakota Supreme Court has more recently considered when evidentiary use of the PBT crosses the line. *State v. Rende*, 905 N.W.2d 909 (N.D. 2018). In *Rende*, the following testimony was given:

> Q. Now, Trooper Langer, at that point in time, you had asked her for the preliminary breath test, correct?
>
> A. Correct. Yes.
>
> Q. And did the Defendant perform that?
>
> A. She did. Yes.
>
> Q. And once she had performed that, what did you do next?
>
> A. I placed her under arrest for driving under the influence of alcohol.

*Id.* at 912. The state supreme court concluded:

> The above questioning would have almost certainly left the jury with the conclusion Rende had failed the preliminary breath test. Interpreting the term "result," as provided in N.D.C.C. § 39–20–

14(3) to include only numerical values and exclude statements regarding passing or failing the preliminary breath test, defeats the purpose of N.D.C.C. § 39–20–14(3). That line of questioning is also inconsistent with this Court's decision in [*City of Fargo v. Erickson*, 598 N.W.2d 787 (N.D. 1999),] which recognized that even the question of whether or not a driver consented to the preliminary breath test is irrelevant and inadmissible.

*Id.*

*Erickson*, 598 N.W.2d at 790–91, cited by the North Dakota Supreme Court in *Rende*, held that evidence of a driver's consent to take a PBT did not violate that state's laws, but should have been excluded because it was irrelevant:

We agree the language of N.D.C.C. § 39–20–14 explicitly refers to the result of an A.L.E.R.T. test, and not to the admissibility of whether a person consented to take an A.L.E.R.T. test. However, N.D.R.Ev. 401 defines relevant evidence as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." . . .

Probable cause for Erickson's arrest was not an issue at trial rendering the result of the test irrelevant and inadmissible under N.D.C.C. § 39–20–14. Thus, whether Erickson consented to take a breath test was also irrelevant evidence having no tendency "to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." N.D.R.Ev. 401.

(Citation omitted.)

About a decade ago, the Montana Supreme Court considered an evidentiary scenario similar to the present case. *State v. Lozon*, 291 P.3d 1135 (Mont. 2012). In *Lozon*, a video was admitted showing an officer delivering a PBT to the defendant, but the volume was muted to prevent the jury from hearing that the defendant had failed the test. *Id.* at 1137. The Montana Supreme Court held that "[a]lthough Lozon's blood alcohol content level from the [PBT] was not revealed to the jury[,] . . . [t]he video of the [PBT] administration, followed closely by Lozon's arrest, raised a compelling inference that he was over the legal blood

alcohol limit." *Id.* at 1138–39. The court reversed the defendant's conviction. *Id.* at 1139–40.

We agree generally with the path followed by the North Dakota and Montana Supreme Courts. Admission of Amisi's consent to take the PBT followed by his arrest did not technically violate Iowa Code section 321J.5(2). The results of the test did not come into evidence. But rule 5.403 prohibits the use of evidence where "its probative value is substantially outweighed by a danger of . . . unfair prejudice." Iowa R. Evid. 5.403. Here, the evidence was only minimally relevant while being unfairly prejudicial. It left the jury with the impression that Amisi had failed the PBT because the last thing the jury saw was Amisi consenting to the PBT, which "kind of lets [police officers] know how much you've had to drink," before being arrested.[1] Unlike in *Zell,* the district court did not call a halt to references to the PBT and instruct the jury to disregard any references to it. Instead, it allowed the evidence to be repeated through Officer Chadwick's testimony.

The State's contention that it needed the video version of the evidence to show Amisi's movements and manner of speech does not persuade us. Thirty minutes of video from Officer Chadwick's bodycam were admitted at trial; the PBT discussion took up only twenty seconds. Those twenty seconds could easily have been redacted as requested by Amisi's counsel without affecting the jury's ability to evaluate Amisi's sobriety (or lack thereof). We find that admission of the evidence violated rule 5.403.

---

[1]Moreover, as the voir dire record in this case suggests, jurors are likely to have background knowledge in this area, from personal experience or otherwise. In 2022, 14,228 drivers in Iowa had their licenses revoked for OWI violations. Iowa Dep't of Transp., *Iowa OWI Revocations by Year and County 2003-2022* 3 (2023), https://iowadot.gov/mvd/factsandstats (the report can be found by clicking the link titled "OWI revocations in Iowa by county – 2003 to 2022").

In our view, the district court abused its discretion. It did not attempt to balance the probative value and danger of unfair prejudice. It simply noted that the results themselves were not coming into evidence. Any balancing would have indicated that the probative value was quite minimal and the danger of unfair prejudice by allowing the PBT results to come in through the back door was significant.

**B. Harmless Error.** We now turn to whether this error requires reversal. The State argues that even if error occurred, it was harmless.

"Where a nonconstitutional error [is] claimed, the test for determining whether the evidence [is] prejudicial and therefore require[s] reversal [is] this: 'Does it sufficiently appear that the rights of the complaining party have been injuriously affected by the error or that he has suffered a miscarriage of justice?'" *Ness*, 907 N.W.2d at 488 (alterations in original) (quoting *State v. Sullivan*, 679 N.W.2d 19, 29 (Iowa 2004)).

In *State v. Ness*, we reversed for a new trial where the state conceded that a test using a PBT device should not have been admitted at trial. *Id.* at 487, 489. We characterized the evidence as "strong" but not "overwhelming":

> This includes several witnesses' testimony that Ness gave off a strong smell of an alcoholic beverage, had bloodshot and watery eyes, was unsteady on his feet, and slurred his speech; Ness's admission at the probation office that he had been drinking; and Ness's admissions at the jail that he was presently intoxicated.

*Id.* at 489.

Yet that case involved the wrongful admission of an actual numerical test result of .130. *Id.* We noted that "there is something special about objective tests." *Id.* We also noted that "the prosecutor referred to the .130 test result three times during her brief closing argument." *Id.*

Here the prosecutor did not mention the PBT at all in closing argument. And there was little need to, since there was considerable other evidence of Amisi's intoxication. Officer Perez's dashcam video shows Amisi's vehicle repeatedly swerving all the way into the oncoming lane of traffic. Amisi had difficulty simply parking his car in a parking lot. Amisi was found with an open container of an alcoholic beverage in his car and admitted to officers that he had last drank about an hour ago. He smelled of an alcoholic beverage and failed three different field sobriety tests. His manner of speaking was voluble, and what he said often didn't make sense. At the station he first begged to be driven home, then became obstructionist, and finally denied that he had even driven the car. We conclude that Amisi's rights were not injuriously affected, and he would have been found guilty even without the 20 seconds of video concerning the PBT. The rule 5.403 error was harmless. *See State v. Garrity*, 765 N.W.2d 592, 597–98 (Iowa 2009) (finding the admission of the defendant's refusal to take a chemical test where his section 804.20 rights were violated to be harmless error in light of the defendant's behavior and his having failed three sobriety tests, having admitted to drinking, and smelling of an alcoholic beverage on his breath).

While the concepts of abuse of discretion and harmless error are related in some ways, they are analytically distinct. "Danger of unfair prejudice" differs from actual prejudice. Thus, our precedent indicates that there are occasions when a rule 5.403 violation should be regarded as harmless. *See, e.g., State v. Martin*, 704 N.W.2d 665, 673 (Iowa 2005). In *State v. Martin*, the "police received a report that a man was 'pimping' a female in the 200 block of West Third Street." *Id.* at 667. When the police arrived, they stopped the defendant as he "was in the area and matched the suspect's general description." *Id.* One of the officers was familiar with the defendant and his criminal past and initiated a forcible pat-down. *Id.* At trial, the officer was permitted to "testif[y] he patted down [the

defendant] because [the defendant] had been 'arrested for robberies,' 'arrested for assault on a police officer,' and was 'known to be violent.' " *Id.* at 671.

On appeal, the defendant argued the district court abused its discretion in admitting the officer's testimony. *Id.* We found that the evidence was probative of the defendant's "propensity for violence mak[ing] it more probable the officer had a good reason to pat him down." *Id.* at 672. But any probative value of this evidence was minimal as the officer's "reason for patting [the defendant] down— was not a primary issue in the case, if an issue at all." *Id.* On the other hand, "[t]he evidence of [the defendant's] violent nature could only serve to inflame the passions of the jury." *Id.* Thus, we found that "the district court should have excluded the officer's testimony about [the defendant's] prior arrests and violent tendencies" because it violated rule 5.403. *Id.* at 673.

Although the district court wrongly admitted the officer's testimony, that did not require the defendant's conviction to be reversed. *Id.* at 673. We determined that the admission of the evidence did not prejudice the defendant and was a harmless error for three reasons, including the overwhelming evidence of guilt. *Id.*

We followed a similar line of reasoning in *State v. Parker*, 747 N.W.2d 196 (Iowa 2008). The issue in *Parker* was rooted in a rule 5.609(*b*)(1) analysis. *Id.* at 205, 208. This rule limits trial counsel's ability to impeach a witness with past convictions under certain circumstances and requires a similar balancing to rule 5.403, although with the burden placed on the party seeking to introduce the conviction. Iowa R. Evid. 5.609.

In *Parker*, the defendant "was convicted by a jury of second-degree robbery and sentenced as an habitual offender." 747 N.W.2d at 200. At trial, the defendant took the stand, and the state was permitted to introduce the defendant's thirteen-year-old drug convictions. *Id.* at 202. The defendant

appealed, asserting that this evidence should have been excluded under rule 5.609. *Id.* at 205.

We agreed. *Id.* at 209. "[T]here were no circumstances presented to reveal the two convictions had any particular probative value to aid the jury in assessing [the defendant's] credibility as a witness." *Id.* On the other hand, "[t]he two prior drug convictions not only potentially cast [the defendant] as a drug dealer, but one conviction involved dealing drugs near schools. An obvious danger exists that a jury may convict such an individual with little concern for his actual guilt as to the crime in question." *Id.* at 208–09. Thus, we found that the defendant's "prior drug convictions were inadmissible under rule 5.609(*b*)" and "[t]he trial court erred in admitting the prior drug convictions into evidence at trial." *Id.* at 209.

But we then relied on *Martin* and considered "the existence of overwhelming evidence of guilt" in the record. *Id.* at 210. On that basis, we found the error was harmless and did not warrant a new trial. *Id.*

The United States Court of Appeals for the Eighth Circuit has followed a similar approach under Federal Rule of Evidence 403. *See United States v. Ramos,* 852 F.3d 747, 755–57 (8th Cir. 2017) (finding a rule 403 violation but determining the error was harmless in light of the overwhelming evidence of the defendant's guilt). In summary, we conclude that while evidence of the defendant's consent to taking the PBT followed by his arrest amounted to a rule 5.403 violation, the violation was harmless.

**C. Sufficiency of the Evidence.** Finally, we address Amisi's challenge to the sufficiency of the evidence, beginning with the OWI conviction. For the reasons already discussed, there was sufficient evidence to support Amisi's OWI conviction. A reasonable jury could find that he was operating his vehicle while under the influence of an alcoholic beverage. *See* Iowa Code § 321J.2(1)(*a*).

We turn now to Amisi's eluding conviction. Iowa Code section 321.279(1)(*a*) provides, "The driver of a motor vehicle commits a serious misdemeanor if the driver willfully fails to bring the motor vehicle to a stop or otherwise eludes or attempts to elude a marked or unmarked official law enforcement vehicle driven by a peace officer after being given a visual and audible signal to stop." The district court's jury instructions mirrored these statutory elements.

Officer Perez testified that Amisi failed to stop when the officer activated his flashers and sirens. The dashcam video supports this testimony. It shows that initially Officer Perez activated only his flashers. This seemingly had no impact on Amisi, who continued to drive erratically, careening between the proper side of the road and the oncoming lane of traffic. When Officer Perez turned on his sirens as well, Amisi suddenly sped up and drove dangerously the wrong way up a hill. Only after about 15 seconds did he slow down and begin the process of pulling over. The evidence thus allowed a reasonable jury to conclude that Amisi intentionally eluded when given a visual and audible signal to stop.

### V. Conclusion.

For the foregoing reasons, we affirm Amisi's convictions and sentence.

**DECISION OF COURT OF APPEALS AND DISTRICT COURT JUDGMENT AFFIRMED.**

Waterman, Oxley, and McDermott, JJ., join this opinion. McDonald, J., files an opinion concurring specially, in which Christensen, C.J., and May, J., join.

**MCDONALD, Justice (concurring specially).**

I join the court's opinion regarding the sufficiency of the evidence supporting Amisi's convictions. I concur only in the result with respect to the evidentiary issue. I would not reach the issue of whether the district court abused its considerable discretion in admitting the edited video. Amisi objected to the admission of the edited video showing his consent to the preliminary breath test (PBT) and his arrest, but he did not object to Officer Chadwick's testimony regarding the same events. Officer Chadwick's testimony provided substantially the same evidence as that shown in the video. Iowa's courts have repeatedly held that "prejudice will not be found where substantially the same evidence is in the record without objection." *State v. McKettrick*, 480 N.W.2d 52, 60 (Iowa 1992); *see, e.g.*, *State v. Reynolds*, 746 N.W.2d 837, 843–44 (Iowa 2008) (holding there was no prejudice where substantially the same evidence was admitted without objection); *State v. Simmons*, 714 N.W.2d 264, 276 (Iowa 2006) ("If substantially the same evidence is in the record, erroneously admitted evidence is not considered prejudicial." (quoting *State v. Deases*, 518 N.W.2d 784, 791 (Iowa 1994))); *State v. McGuire*, 572 N.W.2d 545, 547–48 (Iowa 1997) (concluding there was no prejudice where substantially the same evidence was admitted); *State v. Sowder*, 394 N.W.2d 368, 372 (Iowa 1986) ("We have held that where substantially the same evidence is in the record, erroneously admitted evidence will not be considered prejudicial."); *State v. Burgdorf*, 861 N.W.2d 273, 277 (Iowa Ct. App. 2014) (stating presumption of prejudice is overcome "if substantially the same evidence is already in the record"). Amisi's failure to object to Officer Chadwick's testimony precludes a finding of prejudice here.

Christensen, C.J., and May, J., join this special concurrence.