**STATE of Iowa, Appellee,**

v.

**John Monroe BRANCH, Appellant.**

**No. 55512.**

Supreme Court of Iowa.

Oct. 16, 1974.

Joseph Z. Marks, Des Moines, for appellant.

Richard C. Turner, Atty. Gen., David M. Dryer, Asst. Atty. Gen., and Ray Fenton, County Atty., for appellee.

Heard by MOORE, C. J., and MASON, RAWLINGS, LeGRAND and REYNOLDSON, JJ.

MOORE, Chief Justice.

Defendant, John Monroe Branch, appeals from conviction and sentence for the crime of delivery of a controlled substance in violation of Senate File 1, Section 401, as amended by Senate File 468, Acts of 64th General Assembly, First Session (section 204.401, 1973 Code of Iowa). We reverse.

Phillip Booker, Des Moines Police Department undercover agent during the evening of November 21, 1971 met Mark Boyd and James Trotter, Des Moines police officers, for the purpose of setting up a purchase of heroin. After searching Booker and his automobile and removing all money from his person, the officers gave him $7.00 in bills with recorded serial numbers. Booker then drove his car to a pool hall, Corner Pocket, at 23rd and University Avenue in Des Moines. The officers followed in their car. They saw Booker enter the pool hall, speak with two black male adults, walk with one of the individuals to a place inside the pool hall, not in their line of sight, and a short time later leave through the front door.

At trial Booker testified that while inside the pool hall he and defendant went to the men's room where, with the $7.00 furnished by Boyd and Trotter, he purchased from defendant one capsule of what defendant said was heroin. Booker left and drove to a prearranged meeting place. During this trip Booker's car was in sight of Boyd and Trotter for all but a few seconds. Upon arrival at the meeting place Booker's car and person were searched again. Booker gave the officers a pink capsule containing white powder, allegedly purchased from defendant at the pool hall. This capsule was placed in a transparent lockseal plastic bag. Also placed therein was a form slip filled in by Trotter and signed by Booker, Boyd and Trotter. It reads as follows:

| (Form) | (Portion Filled in) |
|---|---|
| Name of Drug | Heroin (1 Pink Capsule) |
| Date and Time of Sale | 21 Nov. 71    1935 Hours |
| Name of Defendant (Seller) | John M. Branch |
| Purchase Price | $7.00 |
| Special Agent | Phillip Booker |
| Time, Date of Delivery to Officers | 1944 Hours    21 Nov. 71 |
| Officers | J. L. Trotter    M. Boyd |

At trial the bag, containing the capsule and slip of paper, was identified as exhibit A.

Officer Trotter took the sealed bag (exhibit A) from the meeting place to the police station and placed it inside a locker. Officers Trotter and Boyd, who were called as witnesses at trial, and Officer Jack Morton, who was not called, all had keys to the locker. On December 1, 1971 Trotter removed exhibit A from the locker and took it to State chemist Steven Eck. After Eck analyzed the contents of the capsule, which he opined was heroin, he again sealed it in the bag and returned it to the police. He testified exhibit A at trial time was in the same condition as when he returned it. Officer Boyd testified exhibit A appeared to be the original bag placed in the locker.

I. Defendant first asserts the trial court erred in admitting exhibit A in evidence over his objection there was a break in the chain of custody. He argues the break existed because Officer Morton had a key and access to the locker where exhibit A had been kept. He cites and relies on this court's holding in Joyner v. Utterback, 196 Iowa 1040, 195 N.W. 594 and State v. Wel-

tha, 228 Iowa 519, 292 N.W. 148. Both are factually distinguishable. In Joyner the evidence in question, a bottle containing alcoholic beverage, was left in a room in the "liquor bureau." Several persons had access to the room. The bottle was in the room for a considerable period of time. It did not clearly appear in whose custody the exhibit remained. In Weltha the blood sample involved was handled by unnamed persons and was left unattended in places where several unidentified persons had access to it.

Recently in State v. Lunsford, Iowa, 204 N.W.2d 613 we reviewed in depth our earlier "chain of custody" cases, as well as those from other jurisdictions and quoted the general rule as stated in McCormick on Evidence, section 212 (Second Ed. 1972). Repetition is unnecessary.

In Lunsford at page 617 we state:

"Determination of the sufficiency of identification is made by the trial judge. 'Factors to be considered in making this determination include the nature of the article, the circumstances surrounding the [nature] and custody of it, and the likelihood of intermeddlers tampering with it.' Gallego v. United States, 276 F.2d 914, 917 (9 Cir. 1960).

"It is not essential for admissibility that the State negative the possibility of tampering or substitution absolutely. It is sufficient to establish that it is reasonably probable tampering or substitution did not occur. (Citations). Contrary speculation affects the weight of the evidence but not its admissibility. (Citations).

" * * *.

"Trial court discretion is involved. 'The trial judge's determination that the showing as to identification and nature of contents is sufficient to warrant reception of an article in evidence may not be overturned except for a clear abuse of discretion.' (Citations)."

See also State v. Mattingly, Iowa, 220 N.W.2d 865, filed July 31, 1974.

In United States v. Brown, 8 Cir., 482 F.2d 1226, 1228, we find, " * * * the trial court is entitled to assume that an official would not tamper with the exhibits or their contents."

We find no abuse of discretion by the trial court's overruling defendant's objection to exhibit A on the ground there was a break in the chain of custody.

II. Defendant next asserts it was error to permit hearsay evidence contained in exhibit A to be submitted to the jury. Hearsay is generally defined as an assertion "other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." State v. Mattingly, Iowa, 220 N.W.2d 865, 869; State v. Lanphear, Iowa, 220 N.W.2d 618, 622; Ruden v. Hansen, Iowa, 206 N.W.2d 713, 717, and citations. See also 31A C.J.S. Evidence § 192.

Hearsay relates to written statements as well as oral statements. State v. Lanphear, supra; State v. Smith, Iowa, 195 N.W.2d 673, 675. In Rubin Bros. Butter & Egg Co. v. Larson, 245 Iowa 741, 745, 63 N.W.2d 908, 910, we say: "Of course hearsay is not limited to oral testimony. A statement objectionable as hearsay does not become competent by reducing it to writing."

In addition to the break in chain of custody objection when exhibit A was offered in evidence, defense counsel stated: "I also would object to the slip that is inside the bag and particularly to the writing there with regard to the seller for the reason that it is hearsay."

There is little doubt the evidence slip signed by Officers Trotter and Boyd contained hearsay. It identified defendant as the seller of heroin as well as other evidence Trotter and Boyd could have only obtained from Booker. They did not witness a sale.

■ Error in admitting hearsay evidence must be presumed to be prejudicial unless the contrary is affirmatively established. State v. Mattingly, Iowa, 220 N.W.2d 865, 869; Vine Street Corporation v. City of Council Bluffs, Iowa, 220 N.W.2d 860, 863 and citations.

■ The State argues prejudicial error did not result from the admission of the slip since the objectionable evidence was previously introduced through the testimony of Booker. The general rule is stated in State v. Shephard, 255 Iowa 1218, 124 N.W.2d 712. The State further argues the hearsay contained in the slip was cumulative of Booker's evidence, citing State v. McCollom, 260 Iowa 977, 151 N.W.2d 519. The State's contentions are untenable. There was no testimony Officers Trotter and Boyd knew there was a sale and that defendant was the seller. Each testified he did not witness a sale.

The trial court erred in overruling defendant's hearsay objection to the written signed slip, part of exhibit A, which was offered and submitted for consideration by the jury.

■ III. Defendant's third error asserts the trial court erred, over his objection, in allowing exhibit A, which contained the visible written slip, to be taken to the jury room for consideration. It contained what is described in United States v. Ware, 7 Cir., 247 F.2d 698, 700, as " * * * a neat condensation of the government's whole case against the defendant." The court in Ware reasoned that the government's witnesses in effect accompanied the jury into the jury room. The facts in Ware are very similar to those in the case at bar. In Ware the court held that although the evidence was cumulative of the testimony, submission of the written statement was reversible error.

The reasoning and holding in Ware is followed in Sanchez v. United States, 8 Cir., 293 F.2d 260; United States v. Adams, 2 Cir., 385 F.2d 548; United States v. Brown, 5 Cir., 451 F.2d 1231 and Coulter v. State,

Tex.Cr.App., 494 S.W.2d 876. In United States v. Parker, 8 Cir., 491 F.2d 517, the holding in Sanchez is recognized and then distinguished factually.

The trial court committed error in allowing the above referred to evidence slip to be taken to the jury room for consideration.

Reversed.