STATE of Iowa, Appellee,

v.

**Charles O. REESE, Appellant.**

**No. 59747.**

Supreme Court of Iowa.

Nov. 23, 1977.

F. J. Kraschel, Council Bluffs, for appellant.

Richard C. Turner, Atty. Gen., Mark S. Beckman, Asst. Atty. Gen., and Lyle Rodenburg, County Atty., for appellee.

Heard by MOORE, C. J., and RAWLINGS, REES, HARRIS and McCORMICK, JJ.

REES, Justice.

The defendant, Charles O. Reese, was charged by county attorney's information with the crime of murder in violation of § 690.1 as defined and punishable by § 690.-2, The Code, 1975. Following the entry of his plea of not guilty, he was tried to a jury, convicted and sentenced to life imprisonment. He appeals. We reverse and remand.

The State contends the defendant participated with others in the murder of one Charles Sallis of Omaha. Sallis' body was found on January 18, 1976, along Interstate Highway # 80 east of Council Bluffs. Jerry Hildreth, Isaiah Jones and defendant Reese were all charged with Sallis' murder. Jones was granted immunity by the State in consideration for his agreeing to testify at the trial of defendant.

Jones testified that Sallis' wife, Kathy, had written a note offering to compensate anyone who killed her husband, and that the note had been seen by defendant. Jones testified that he, Hildreth and Reese seized Sallis on an Omaha street during the early morning hours of January 18, 1976 and took him to Jones' house where defendant tied Sallis' hands together with a wire. He further testified that at about 5:45 a. m. the same morning the three men placed Sallis in the trunk of an automobile and drove on Interstate Highway # 80 to Iowa. During the ride into Iowa an argument ensued among the three men over whether Sallis should be killed. Jones stopped the car and defendant and Hildreth alighted therefrom and opened the trunk. Then, according to Jones, Reese and Hildreth advanced the thought there were too many cars along the highway to kill Sallis at that point. Jones testified he then drove the car further down the Interstate until Hildreth again ordered him to stop. When he did so, Reese and Hildreth again opened the trunk and Sallis jumped out, bumping Hildreth causing him to fall down. Sallis then started to run along the Interstate with Reese and Hildreth following him, Hildreth being then armed with a shotgun. According to Jones, Sallis ran out of his range of vision. Hildreth and defendant returned to the automobile about five minutes later. Jones testified Reese had blood on his coat and on the rubber gloves he was wearing. Later Hildreth told Jones he had shot and killed Sallis, and it was during the testimony of Jones in this connection that the prosecuting attorney elicited from Jones the fact that defendant had told him he had killed other people on other occasions.

Defendant testified in his own behalf that he and his confederates had captured Sallis in order to scare him and had no intention of killing him. He declared that Mrs. Sallis' note had not been exhibited to him by Jones, and that he was not present when Sallis was shot in Iowa but remained at the Jones home where he was sleeping at the time the killing occurred.

Hildreth testified the defendant did not accompany him and Jones when they took Sallis into Iowa.

During the closing arguments of counsel certain physical evidence which had been introduced into the record were handed to the jurors in connection with the prosecutor's argument. The items still had affixed to them the identification tags which had been placed on them by the county medical examiner or by other law enforcement officers. Some of the exhibits were photographs which bore the legend on the reverse side: "Homicide; Charles Dean Sallis". Defendant's counsel started to object to the use of the exhibits in such manner, and to the jurors' examining them during closing arguments, but did not pursue the matter to a determination or ruling by the court. Later, defense counsel moved for a mistrial based on the fact the jurors had seen the exhibits with what he termed prejudicial statements and inscriptions upon them. The motion was overruled. The defense counsel also objected to the exhibits being taken into the jury room by the jury during its deliberations, and so the court restricted the taking of all of the physical

evidence to the jury room except the photographs which it permitted the jurors to take with them.

Following the arguments of counsel, final draft copies of the court's instructions were exhibited to counsel. The preliminary instructions had not included an instruction on second degree murder, and defendant's counsel objected to such omission and requested that the court give to the jury an instruction on second degree murder, which the court refused to do.

Following the rendition of a verdict of guilty of murder in the first degree by the jury, defendant's counsel moved for a new trial on the basis the trial court's refusal to submit a second degree murder instruction was fatally prejudicial to the defendant and further the fact the jury was permitted to examine the exhibits with the claimed objectionable legends thereon so prejudiced the defendant that he was denied a fair trial. Upon the overruling of defendant's motion for a new trial, he appealed, asserting the trial court committed reversible errors which are raised by the following issues stated for review:

(1) The trial court erred by overruling the defendant's objection to the testimony of Isaiah Jones as a witness for the State to the effect that defendant had told Jones he had committed prior murders.

(2) Trial court erred in permitting the jury to see the exhibits introduced by the State with identification tags and information allegedly prejudicial to the defendant written thereon or appended thereto, and permitting some of the exhibits to be taken to the jury room with the jurors during their deliberations.

(3) Trial court erred in failing to instruct the jury on the elements of the charge of murder in the second degree.

(4) On the basis of all the foregoing claimed errors and in spite of any error committed by counsel in failing to preserve the same for appeal, that defendant was deprived of a fair trial.

I. Defendant first contends the trial court erred in overruling defendant's counsel's objection to certain testimony of the witness Jones. The transcript of testimony reflects the following line of interrogation and answers:

Q. Was there any conversation between yourself and Mr. Reese generally about Mr. Hildreth?

A. Yes.

Q. What was said?

A. They just talked about different people that they, you know, killed. That's all.

Q. Did Mr. Reese specify how many they had killed?

A. Mr. Reese told me earlier—

MR. WHEELER: Your Honor, I want to object to this as being irrelevant and prejudicial and completely improper line of questioning on the part of counsel for the State making reference to events having nothing to do with the question in hand.

THE COURT: Overruled. You may complete your answer or answer the question.

THE WITNESS: Would you repeat the question?

Q. Did Mr. Reese tell you how many men they had killed?

A. Yes, earlier before Mr. Hildreth arrived. I think a couple of days after Mr. Reese arrived here in Omaha he was telling me about himself and I told him that I didn't want to listen to it.

Defendant's contention is that the testimony of the witness Jones about the statements made by defendant concerning other killings constituted evidence of prior crimes not related to the charge presently against the defendant, and that trial court should have excluded the same by sustaining defendant's objections. The State on the other hand, contends the defendant did not properly inform the trial court of the error since it was not timely and defendant did not make a motion to strike the evidence. Therefore, the State asserts, the error was not preserved and does not constitute basis for review here.

It is true that evidence of prior crimes normally is not admissible in a criminal case. *State v. Johnson*, 224 N.W.2d 617, 619 (Iowa 1974); *State v. Wright*, 191 N.W.2d 638, 640 (Iowa 1971). However, proof of prior crimes may be admitted in order to show: "(1) motive, (2) intent, (3) absence of mistake or accident, (4) a common scheme or system of criminal activity embracing the commission of two or more crimes so related that proof of one tends to prove the other, or (5) identity of the person charged with the commission of the crime." *State v. Wright*, 191 N.W.2d at 640. In the matter before us here there was no evidence reflected by the record from which we could conclude the testimony set out above falls within any of the enumerated exceptions. Therefore, if the objection were properly made and the error preserved, we would have to conclude that the trial court committed reversible error in permitting the evidence of criminal activity to come before the jury.

However, we are persuaded the defense counsel did not properly preserve error in connection with this testimony. In order for their to be a proper preservation of errors committed by the trial court in the introduction of evidence at trial, objections to evidence must be timely and be raised at the earliest time the error becomes apparent. *State v. Boose*, 202 N.W.2d 368 (Iowa 1972); *State v. Binkley*, 201 N.W.2d 917 (Iowa 1972). It is likewise true that when an objection is made after the answer to a question is in the record, in order for the objection to be adequate a motion to strike must be made, application must be made to have the objection precede the answer, or an excuse offered for the delay in objecting to the evidence. *State v. Hinkle*, 229 N.W.2d 744, 748 (Iowa 1975); *State v. Hendren*, 216 N.W.2d 302, 305 (Iowa 1974); *State v. Taylor*, 201 N.W.2d 724, 727 (Iowa 1972). In *State v. Hinkle*, 229 N.W.2d at 748, the following apropos to this proposition appears:

> "Abraham testified Patty telephoned at about 4:15 P. M., October 6, concerning a telephone call she had received.

> "The following record was then made:
> " 'Q. (By Mr. Hansen) And after you had the conversation with her, and as a result of that conversation, what did you say to her? A. I told her that I didn't think that the defendant, Hinkle, would kill her.
> MR. HOLMES: (defendant's counsel) Just a minute, I'm going to object to that, and I want to make a standing objection to this testimony. It is an attempt by the County to circumvent the hearsay rule and try to get in some testimony.'
> "The belated objection interposed by defendant was clearly inadequate:
> " 'No motion to strike was made. No application was made to have the objection precede any answers. No excuse was offered for tardiness in objecting. No claim of error was preserved.'
> "*State v. Hendren*, 216 N.W.2d 302, 305 (Iowa 1974) and citations."

Since the rule enunciated in *Hinkle* was applied to make an objection lodged directly after the inadmissible testimony was in the record inadequate to preserve error, the objection is also inadequate when it is made after another question concerning the inadmissible testimony is in the process of being posed to the witness. Since there was no application to have the objection precede the answer, no motion to strike was made, and no excuse for the delay was given, the objection made after the testimony concerning defendant's statement of other crimes was inadequate to preserve error in this case. Defendant claims that moving to strike would have been a useless gesture since the court had already overruled defendant's objection. However, a motion to strike, or any other delineated procedure set out above, is not a "useless gesture" since it aids the trial court in understanding the nature of the error claimed and provides the trial court with an opportunity to correct any error committed.

The defendant also contends that he could not have made a motion to strike in this case, and cites *State v. Nathoo*, 152 Iowa 665, 673, 133 N.W. 129, 132; *State v. Rutledge*, 135 Iowa 581, 113 N.W. 461, 464;

and *Christensen v. Thompson*, 123 Iowa 717, 99 N.W. 591, all of which hold that a party to an action cannot move to strike an answer on the grounds that it is not responsive to the question unless the motion is put by the interrogator. However, the propositions for which said cases stand are not relevant here where the defendant is objecting to an answer prejudicial to his position and inadmissible against him as being unresponsive to the question being asked by adverse counsel. A party may move to strike testimony or any other evidence which is prejudicial and inadmissible. See *Hinkle* cited above.

We therefore conclude the objection made by counsel and the record made with reference to the line of questioning set out above, was not adequate to preserve error for review here.

■ II. In his second issue for review defendant contends the trial court committed error when it permitted identification tags and written information to remain attached to certain exhibits which the jury was permitted to see during the closing argument by the prosecutor and permitted to take with it to the jury room during its deliberations. Some of the exhibits referred to were photographs upon which certain legends appeared and other exhibits were tangible objects to which tags and stickers had been affixed. Defendant contends the trial court was in error in permitting the jury to see the exhibits with the claimed prejudicial legends attached to them or appearing on them.

On the other hand, the State contends there was nothing appearing on the exhibits or the tags attached to them which would prejudice the defendant, and that in any case the objection to the exhibits made by the defendant was not timely since it was not raised at the earliest possible time.

We have held on prior occasions that identification tags which summarize the State's case and are placed on exhibits which are given to a jury, unduly emphasize the State's case against the defendant and require a reversal of the conviction. See *State v. Shultz*, 231 N.W.2d 585 (Iowa

1975); *State v. Branch*, 222 N.W.2d 423 (Iowa 1974).

Our opinions in *Shultz* and *Branch*, above, were based on the fact that tags attached to exhibits contained a summary of the State's case against those defendants. In *Branch*, 222 N.W.2d at 425, in reversing the defendant's conviction of the crime of delivery of a controlled substance, we noted the physical evidence which the jury had before it was attached to a slip which contained the name of the drug, the time of sale, the name of the defendant, the purchase price, the special agent, the time and date of delivery to the officers, and the names of officers. Clearly, such a detailed recitation of facts constituted a summarization of the State's case against the defendant and was obviously prejudicial and reversal in *Branch* was required.

In *Shultz*, 231 N.W.2d at 587, we reversed defendant's conviction for breaking and entering because certain identification tags attached to physical evidence when it was given to the jury contained a description of the evidence, the place where it was found, the date and time of recovery, the defendant's name, the charge, the victim of the crime charged, and the person who recovered the evidence.

Again, in *Shultz* we concluded that a summary of the State's case appeared on the tags and that a reversal of his conviction was required because of the prejudicial nature of the identification tags attached to the exhibits.

The facts in *Shultz* and *Branch* can be distinguished from the facts in the present case for that the written inscriptions on the photographs and the identification tags attached to or appearing on the exhibits did not in any sense summarize the State's case against the defendant. The written inscription on each photograph contained only the following:

"RE: D.I. 76/1 (initials)
HOMICIDE: Charles Dean *Sallis*.
Taken: 1/18/76"

The identification so placed upon the tags or on the physical evidence itself contained

only a description of the item, the person who found it, where it was found, and the signature of the medical examiner. No reference was made to the defendant, the circumstances of the crime, or any circumstance which could have in any manner prejudiced the defendant. The legends and notations were descriptive of the evidence only, and did not in any manner emphasize or summarize the State's case to the defendant's prejudice.

In the matter before us here the inscriptions on the exhibits and on the identification tags attached to them were not summaries of the State's case against the defendant and there is no merit in the defendant's contention the court committed reversible error in permitting certain of the exhibits to go to the jury with the identification legends appearing thereon.

We deem it unnecessary to discuss the State's contention that defendant did not make timely objection to the submission of the identification tags and inscriptions placed on the photographs.

III. We are next confronted with the defendant's contention the trial court erred in refusing or failing to submit to the jury an instruction on the crime of murder in the second degree. Defendant's counsel requested a second degree murder instruction, and objected to the fact that it had not been included in the final draft of the court's instructions, but we find in the record no ruling on the request for the submission of such an instruction. A motion for a new trial, based in part on the failure of the court to instruct on the issue of second degree murder, was overruled. The State contends the trial court did not err since there was no preservation of error, because no ruling on the requested instruction was obtained or that no instruction on second degree murder was required, there being no evidence supporting a conviction of murder in the second degree. The State contends the evidence must be viewed in a light most favorable to the State in the court's ruling on this issue.

Defendant, on the other hand, contends error was preserved since he requested the instruction and objected to its noninclusion in the final draft of instructions, and further asserts there is adequate evidence in the record to support a conviction of murder in the second degree and that an instruction on second degree murder was required. We find merit in defendant's contention in this regard.

■ Initially, we are disposed to observe that error was preserved since a request for an instruction was made and the motion for a new trial based in part on the refusal to submit such an instruction was overruled. In *Gunnison v. Torrey*, 216 N.W.2d 361, 363 (Iowa 1974), we held that a request to give an instruction and an objection to the trial court's failure to submit such an instruction requested, under the Rules of Civil Procedure, preserved error. See *Stewart v. Hilton*, 247 Iowa 988, 994, 77 N.W.2d 637, 641. Also, in *Gunnison*, the complaining party moved for a mistrial based on the court's failure to give a requested instruction.

The Rules of Civil Procedure are applicable to the instruction of juries in criminal cases. Section 780.35, The Code, 1975. Error is therefore preserved in a criminal case where defense counsel objects to the failure of the court to give a requested instruction, especially where the matter is further fortified by a motion for a new trial based on such failure on the part of the trial court. We must therefore hold error was properly preserved.

We now turn to a consideration of the question as to whether there was evidence to support a second degree murder conviction and by what test we should review the evidence supportive thereof. There is no argument that a second degree murder instruction should have been given if there were evidence justifying conviction of the defendant on the crime of murder in the second degree. In *State v. Millspaugh*, 257 N.W.2d 513 (Iowa 1977), we said it is reversible error for the trial court not to instruct the jury on an offense lesser than the one charged if there were evidence to support a conviction of such an included offense. In enunciating the test for the necessity of inclusion of instructions on the lesser included offense, we said:

"The determination of whether to submit a lesser offense involves a two-step process. *State v. Stergion*, 248 N.W.2d 911 (Iowa); *State v. Redmon*, 244 N.W.2d 792 (Iowa). We stated in *State v. Rosewall*, 239 N.W.2d 171, 174 (Iowa), 'Under our cases a lesser included offense is appropriate for submission when (1) the elements of the lesser offense are an elementary part of the greater offense (the legal test) and (2) there is a factual basis in the record for submitting the included offense to the jury (the factual test).'

"As to the legal test, both second-degree murder and manslaughter are included in a first-degree murder charge. § 785.5; *State v. Smith*, 132 Iowa 645, 109 N.W. 115. The question relates to the factual test—whether 'there is a factual basis in the record for submitting the included offense to the jury.'" *State v. Millspaugh*, 257 N.W.2d at 516.

See also *State v. Leedom*, 247 Iowa 911, 917, 76 N.W.2d 773, 777.

We are not concerned with the legal test as set out in *Millspaugh*, but we must determine whether there is sufficient evidence to establish "a factual basis in the record for submitting the included offense to the jury." It is the State's contention we must view the evidence in a light most favorable to the State, while the defendant maintains all that is required for the giving of any instruction is that there must be some evidence which supports the giving of that instruction and would permit the jury to convict on the basis thereof. The State refers to a case in which we said, in reviewing guilty convictions, that the court will review the evidence in a light most favorable to the State. *State v. Buttolph*, 204 N.W.2d 824 (Iowa 1972), cert. denied, 414 U.S. 857, 94 S.Ct. 163, 38 L.Ed.2d 107 (1973). Such principle is not applicable to the issue under consideration presently, that is to say, whether an instruction should have been given by the trial court where there is sufficient evidence to support the verdict on a lesser included offense. Where such evidence is in the record the jury must be instructed on that offense. *State v. Cox*, 196 N.W.2d 430, 433 (Iowa 1972); *State v.*

*Pilcher*, 158 N.W.2d 631, 633 (Iowa 1968). We therefore hold that if there were sufficient evidence to support a second degree murder conviction in this case, an instruction on it should have been given, and it was reversible error for the trial court not to submit such instruction.

In applying such test, we must determine whether there was sufficient evidence in the record for the inclusion of a second degree murder instruction in the matter before us here. The crime of murder has been defined in § 690.1, The Code, 1975, as follows: "Whoever kills any human being with malice aforethought, either express or implied, is guilty of murder." First degree murder is distinguished from second degree murder in that an element of first degree murder is specific intent to kill, while this element is not required in second degree murder. The Code, §§ 690.2, 690.3; *State v. Leedom*, 247 Iowa at 916, 76 N.W.2d at 776; *State v. Baratta*, 242 Iowa 1308, 1313, 49 N.W.2d 866, 869. There is sufficient evidence in the record before us to support a conviction of murder without the jury finding the defendant had the specific intent to kill in order for there to be first degree murder. This lack of specific intent on the part of the defendant is supported by the defendant's testimony that there was no intent to kill Sallis and that he advised Sallis' wife Sallis should only be scared and not killed. Also if the jury were inclined to believe the defendant's story that he was not present when Sallis was killed, his testimony that he overheard Jones and Hildreth say they were not going to kill Sallis "but leave him off somewhere" and that he heard Jones say Sallis was shot in a spur-of-the-moment act, could justify the jury in believing the defendant was guilty only of the crime of second degree murder. A conviction of murder in the second degree could also be based on defendant's testimony that Jones told him he killed Sallis because he (Jones) panicked. Finally, a lack of specific intent on the part of defendant could be determined by the jury on the basis of Jones' testimony that Sallis jumped out of the car and in the

anger of the moment Sallis was killed. All of such evidence points to a lack of specific intent on the part of the defendant to kill Sallis and could justify the jury in finding the defendant guilty of the crime of murder in the second degree. As a consequence of the court's failure to submit an instruction on the crime of second degree murder, we hold such omission was reversible error. We must, therefore, reverse the trial court on such grounds.

IV. We need not consider the defendant's contention that as a consequence of the court's cumulative errors he was prejudiced and did not receive a fair trial.

Based upon the court's failure to submit to the jury an instruction on the included offense of second degree murder, we reverse and remand this case for a new trial.

REVERSED AND REMANDED.