# IN THE COURT OF APPEALS OF IOWA

No. 22-0519
Filed May 24, 2023

**STATE OF IOWA,**
        Plaintiff-Appellee,

**vs.**

**TREVER JOE HOWLAND,**
        Defendant-Appellant.
_____

        Appeal from the Iowa District Court for Boone County, Christopher C. Polking (motion for in camera review) and Jennifer Miller (motion in limine and trial), Judges.


        Trever Howland appeals his convictions for sexual abuse in the second degree.  **AFFIRMED.**


        Angela Campbell of Dickey, Campbell, & Sahag Law Firm, PLC, Des Moines, for appellant.

        Brenna Bird, Attorney General, and Louis S. Sloven, Assistant Attorney General, for appellee.


        Heard by Ahlers, P.J., Chicchelly, J., and Blane, S.J.*

        *Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2023).

**AHLERS, Presiding Judge.**

The State charged Trever Howland with multiple counts of sexual abuse in the second degree[1] based on allegations that he performed sex acts on his former girlfriend's daughter when the daughter was around five years old. A jury found Howland guilty of three counts. The district court sentenced Howland to a prison term not to exceed twenty-five years for each count, with the terms to be served concurrently. Howland appeals his convictions. He raises multiple issues, which we will address separately with additional facts provided as needed.

## I.     Sufficiency of the Evidence[2]

Howland contends there was not sufficient evidence to support his convictions. Sufficiency-of-evidence claims are reviewed for correction of errors at law. *State v. Crawford*, 972 N.W.2d 189, 202 (Iowa 2022). Jury verdicts bind us if they are supported by substantial evidence. *Id.* Evidence is substantial if it is sufficient to convince a rational factfinder that the defendant is guilty beyond a reasonable doubt. *Id.* In assessing whether evidence is substantial, "we view the evidence in the light most favorable to the State, including all 'legitimate inferences

---

[1] *See* Iowa Code §§ 709.1, .3(1)(b) (2014).
[2] Section VII of Howland's brief asserts "the verdict is contrary to the law and the evidence" by claiming the evidence is insufficient to support his convictions with references to the weight of the evidence. These are two distinct inquires, and the sufficiency claim implicates double jeopardy. Because success on the sufficiency challenge would require us to remand for judgment of acquittal and end our inquiry, we start our analysis with that issue. With respect to his weight-of-the-evidence references and request for new trial, he does not claim the court abused its discretion in denying his motion for new trial on this basis or claim the court applied the incorrect standard in ruling on the motion for new trial. *See State v. Ary*, 877 N.W.2d 686, 706 (Iowa 2016). So there is nothing for us to review with respect to the weight of the evidence.

and presumptions that may fairly and reasonably be deduced from the record evidence.'" *Id.* (quoting *State v. Tipton*, 897 N.W.2d 653, 692 (Iowa 2017)).

Howland argues that the evidence is insufficient because it is based entirely on the child's testimony. He contends the child's testimony is insufficient to support the convictions because her testimony was not corroborated, her story changed, and her testimony is unbelievable because she testified years later to events that happened when she was as young as three years old.

We make quick work of Howland's lack-of-corroboration argument. Stated simply, corroboration of a victim's testimony is not required. Iowa R. Crim. P. 2.21(3) ("Corroboration of the testimony of victims shall not be required."); *State v. Hildreth*, 582 N.W.2d 167, 170 (Iowa 1998) (stating that "the alleged victim's testimony is by itself sufficient to constitute substantial evidence of defendant's guilt," and observing that "[t]his court has held that a rape victim's accusation need not be corroborated by physical evidence"). So Howland's claim of error based on lack of corroboration fails.

Howland's arguments based on claimed changes in the child's story and the quality of her memory from years before are credibility arguments properly made to the jury. The jury rejected them by returning a guilty verdict. Howland urges us to accept them on appeal. But doing so would be "inconsistent with the standard of appellate review of jury verdicts, which requires that the evidence be viewed in the light most favorable to the verdict and which requires deference to the jury's resolution of disputed factual issues." *State v. Mathis*, 971 N.W.2d 514, 518 (Iowa 2022). When evaluating sufficiency-of-the-evidence challenges, we do not resolve conflicts in the evidence, pass upon the credibility of witnesses,

determine the plausibility of explanations, or weigh the evidence, as such matters are for the factfinder to determine. *State v. Musser*, 721 N.W.2d 758, 761 (Iowa 2006).

Sticking to our obligation to view the evidence in the light most favorable to the verdict and not weigh the evidence, we find the evidence sufficient to convince a rational factfinder that Howland is guilty beyond a reasonable doubt. *See Crawford*, 972 N.W.2d at 202. Therefore, we reject Howland's challenge to the sufficiency of the evidence.

## II.     Access to Privileged Records

Prior to trial, Howland filed a motion requesting an in camera review by the court of the child's therapy records. The district court denied the motion. Howland asserts the court erred in denying the motion. As there is no constitutional challenge to this discovery ruling, we review it for abuse of discretion. *See State v. Thompson*, 836 N.W.2d 470, 476 (Iowa 2013).

In deciding whether the court abused its discretion by not conducting an in camera review of the child's therapy records, we look to Iowa Code section 622.10 (2021). "Iowa Code section 622.10 generally prevents a mental health professional from disclosing 'any confidential communication properly entrusted to the person in the person's professional capacity' associated with the patient's treatment." *State v. Retterath*, 974 N.W.2d 93, 98 (Iowa 2022) (quoting Iowa Code § 622.10(1)). There are two exceptions to this general rule: (1) if the holder of the privilege waives privilege or (2) if the records are "likely to contain exculpatory information that is not available from any other source and for which there is a compelling need for the defendant to present a defense in the case."

Iowa Code § 622.10(4)(a)(2)(a).  "If the defendant satisfies the threshold showing for the second exception, the district court must review the records 'in camera' (privately, without the parties present) to determine whether the records contain exculpatory information."  *Retterath*, 974 N.W.2d at 99.  The child did not waive privilege in this case, so the only exception in play is the second.

Howland asserts that he met the threshold showing needed to trigger the district court's obligation to review the child's therapy records.  He bases this assertion on his theory of defense, which was to undermine the child's credibility by showing (1) Howland was not the only paramour of the child's mother during the time Howland is alleged to have committed the sexual abuse; (2) the child appeared to have suffered trauma as a result of her mother's mental-health issues, instability, and inability to parent the child; and (3) the child has a propensity for confusion or untruthfulness.

Howland fails to establish any meaningful nexus between his defense theories and the child's therapy records.  *See Thompson*, 836 N.W.2d at 490 (finding the defendant failed to make the necessary showing to gain access to the alleged victim's records because he offered "no evidence showing a nexus between the issues at trial and the mental health treatment received by [the alleged victim]").  We address each of his defense theories in turn.

As to his first claim that the mother had other suitors, there is no evidence suggesting the child knew of any other suitors or confused them as being her abuser rather than Howland.  With this lack of evidence, there is no reasonable probability that the child's therapy records would contain exculpatory information.  *See* Iowa Code § 622.10(4)(a)(2)(a) (requiring a defendant to demonstrate "a

reasonable probability that the information sought is likely to contain exculpatory information"). Further, to the extent Howland is simply seeking information as to the identity of other men, he has failed to demonstrate that such information is not available from any other source. *See id.* (requiring a showing that the information sought in the otherwise confidential records "is not available from any other source").

As to his second claim that the child suffered trauma as a result of her mother's issues, there is little question that the mother had dysfunction in her life, which may have negatively impacted the child. However, we fail to see how the mother's dysfunction and any resulting harm to the child leads to the reasonable probability that the child's therapy records would show Howland did not sexually abuse the child. Without a showing of such reasonable probability, Howland was not entitled to a review of the records. *See id.* We also note that, if this claim was enough to meet the threshold necessary to trigger an in camera inspection, it would effectively eliminate the protections provided by section 622.10(4) because all that would be needed to trigger the review would be proof that the person has undergone therapy. We decline to interpret the section so broadly as to negate its purpose of protecting the confidentiality of records. *See State v. Leedom*, 938 N.W.2d 177, 189 (Iowa 2020) ("We reiterate the 'importance of maintaining confidentiality in mental health treatment.'" (quoting *State v. Edouard*, 854 N.W.2d 421, 441 (Iowa 2014))); *Thompson*, 836 N.W.2d at 481 (finding the legislature's purpose in adopting section 622.10(4) was to "restore[] protection for the confidentiality of counseling records while also protecting the due process rights of defendants").

As to Howland's third claim that the child has a propensity for confusion or untruthfulness, there is simply no evidence supporting this claim, let alone evidence that demonstrates a reasonable probability that proof of such propensity would be found in the child's counseling records. The lack of evidence supporting Howland's claim lies in sharp contrast to the evidence in another case in which our supreme court found evidence sufficient to trigger an in camera review. In *Leedom*, the defendant was accused of sexually abusing his granddaughter. 938 N.W.2d at 181. The granddaughter's parents were fighting for custody over her, and the granddaughter admitted having lied about the details of her father's vehicle accident in an effort to secure her preferred placement with her father. *Id.* at 187. Additionally, the granddaughter testified that she had disclosed the abuse to her therapist. *Id.* at 187. Because the therapist was a mandatory reporter, had the granddaughter disclosed the abuse, the therapist would likely have been required to report it. *Id.* at 187–88. Thus, a review of the records had a reasonable probability of showing that the granddaughter made no such report, so her testimony that she had made the report would be contradicted by the records. *Id.* at 188. Based on these considerations, the supreme court concluded the granddaughter's mental-health records should have been reviewed in camera by the district court because the defendant's request to access the records "was a targeted inquiry rather than a fishing expedition." *Id.*

Unlike in *Leedom*, Howland points to no specific evidence that there was a reasonable probability that the child's therapy records would contain exculpatory evidence. Under the circumstances here, we view Howland's request for an in camera review to be a fishing expedition prohibited by the statute rather than a

targeted inquiry permitted by it. We find no abuse of the district court's discretion in declining to conduct such review.

## III.    Vouching

By pretrial motion in limine, Howland sought to prevent a forensic interviewer from testifying about her interview of the child, asserting that such testimony would constitute improper vouching for the credibility of the child. *See State v. Dudley*, 856 N.W.2d 668, 676–78 (Iowa 2014) (prohibiting testimony that comments on another witness's credibility, as such testimony would constitute improper vouching for the other witness's credibility). The court denied the motion, and the expert testified. She testified that she had interviewed the child but gave no details about the interview. When asked whether she was there to testify about the substance of the interview or the credibility of any witness, the expert replied, "No, I'm not. I'm not allowed to." The expert went on to testify about common misconceptions people may have about child sex abuse, but such testimony was limited to the behaviors of child-sex-abuse victims generally, rather than to the child involved in this case.

Howland contends the expert's testimony was improperly admitted for two reasons. First, he asserts the expert's testimony that she was "not allowed to" testify about this child's credibility was an indirect comment on the child's credibility because it suggested that, if she had been allowed to do so, she would have told the jury she found the child credible. Second, Howland contends the expert improperly tailored her testimony about the behaviors of child-sex-abuse victims generally to fit the facts known to her based on her interview of the child. Specifically, Howland objects to the expert testifying that child-sex-abuse victims

9

frequently delay reporting the abuse and that it is common for the abuse victim to be willing to be around the abuser, especially if the abuser plays a disciplinary role in the child's life, as both of these behaviors were behaviors exhibited by the child in this case.

While the State challenges error preservation, we find Howland adequately preserved error via pretrial motion and objections lodged at trial. We review admission of claimed vouching evidence for an abuse of discretion. *State v. Brown*, 856 N.W.2d 685, 688 (Iowa 2014). An abuse of discretion occurs when the district court exercises its discretion on grounds or for reasons that are clearly untenable or unreasonable. *Id.*

"[W]hen an expert comments, directly or indirectly, on a witness's credibility, the expert is giving his or her scientific certainty stamp of approval on the testimony even though an expert cannot accurately opine when a witness is telling the truth." *Dudley*, 856 N.W.2d at 677. In our court system, "[i]t is the jury's function to determine if the victim is telling the truth, not the expert witness's." *Id.* "We need to break down each statement [the defendant] claims as objectionable to determine whether the State crossed the line." *Id.* at 678.

As to Howland's contention that the expert's testimony that she is "not allowed to" to testify about the substance of the interview or credibility of a witness constituted vouching, we find no abuse of discretion in permitting the testimony. While this testimony could be viewed in the nefarious way suggested by Howland, he points to no place in the record where the State used it for that improper purpose. The statement can just as easily be viewed as a simple statement of fact—the expert is, in fact, not allowed to comment on another witness's credibility.

*See*, *e.g.*, *State v. Vandekieft*, No. 17-0876, 2018 WL 2727720, at *5 (Iowa Ct. App. June 6, 2018) (noting the expert "acknowledged she interviewed [the child] but stated she would not give an opinion on the credibility of [the child]" in rejecting vouching challenge). We find no abuse of discretion in permitting this testimony.

As to Howland's complaint that the expert's testimony about the behavior of child-sex-abuse victims in general coincided with the behavior exhibited by this particular child, we find no abuse of discretion in admitting the testimony. An expert is permitted to testify in generalities about behaviors of sexually-abused children. *State v. Jaquez*, 856 N.W.2d 663, 666 (Iowa 2014). The admittedly thin line into impermissible vouching is crossed if the expert testifies that the behavior of the complaining witness comports with the behavior of sexually abused children. *See Dudley*, 856 N.W.2d at 677 ("To allow an expert witness to testify a child's physical manifestations or symptoms are consistent with sexual abuse trauma . . . allows the expert witness to indirectly vouch that the victim was telling the truth because the expert opines the symptoms are consistent with child abuse."). That line was not crossed here, as the expert's testimony remained limited to generalities.

Finding no abuse of discretion, we reject Howland's challenges based on claimed improper vouching by the State's expert.

## IV. Testimony of the Child's Mother

The child's mother testified at trial. Howland challenges the admission of three pieces of her testimony.

### A. Statements Made by the Child to the Mother

Over Howland's hearsay objection, the court permitted the mother to give the following testimony:

> Q: And could you tell the jury what [the child] told you in that first disclosure to you?
>
> . . . .
>
> A: We were bathing my [other daughter], and she had said that they were talking about inappropriate touching and stuff at school and that she had something to tell me. And we went into my room to get [my other daughter] dressed and stuff. And she said that she needed to tell me something that happened to her so I shut the baby monitor off in the living room because all the other kids were out there. And she told me that [Howland] made her suck on his— and she could only get that out, and we were crying. And she said that he also touched her.

Howland claims error in the admission of this testimony as it is hearsay. We review evidentiary rulings based on hearsay for errors at law. *State v. Thompson*, 982 N.W.2d 116, 121 (Iowa 2022).

Hearsay is an out-of-court statement offered "into evidence to prove the truth of the matter asserted in the statement." Iowa R. Evid. 5.801(c). Hearsay is not admissible at trial unless an exception applies. *See* Iowa R. Evid. 5.802.

Here, there is no dispute that the statement is hearsay. The dispute is whether an exception applies. The State relies on the excited-utterance exception. *See* Iowa R. Evid. 5.803(2).

"An excited utterance is '[a] statement relating to a startling event or condition, made while the declarant was under the stress of excitement that it caused.'" *State v. Dessinger*, 958 N.W.2d 590, 601 (Iowa 2021) (alteration in original) (quoting Iowa R. Evid. 5.803(2)). In order to satisfy the excited-utterance exception, "[t]he statement must be made under the excitement of the incident and not on reflection or deliberation." *Id.* The rationale for the exception is that when the statement is made under the stress of the event, it is less likely the person

making the statement will fabricate it. *Id.* We apply a five-factor test to determine whether a statement qualifies as an excited utterance:

> (1) the time lapse between the event and the statement; (2) the extent to which questioning elicit[s] . . . statements that otherwise would not have been volunteered; (3) the age and condition of the declarant; (4) the characteristics of the event being described; and (5) the subject matter of the statement.

*Id.* (quoting *State v. Atwood*, 602 N.W.2d 775, 782 (Iowa 1999)).

We find the time lapse disqualifies the statement from meeting the excited-utterance exception, as the statement was made five to eight years after the events described in the statement. Our cases do not set any firm time deadline, as "statements made hours and even days after the event have been admissible." *Id.* at 601–02 (collecting cases). And, we have allowed for statements "on the high-end of the range" to be permitted for statements made by children. *Id.* at 601. However, we know of no authority permitting a statement to qualify as an excited utterance when it is made years after the event described. While the State makes a creative argument that this qualifies as an excited utterance because it was made shortly after the child first learned at school that what happened to her constituted abuse, it does not change the fact that too much time had passed since the event being described to conclude the child was acting under the excitement of the event and not on reflection or deliberation.

Having concluded the challenged statement is hearsay for which no exception applies, the statement should not have been admitted. But that does not end the discussion. "Under Iowa Rule of Evidence 5.103, we may not find error on any ruling admitting evidence unless the ruling affected 'a substantial right of the party' opposing admission." *State v. Wilson*, 878 N.W.2d 203, 218–19 (Iowa

2016). Wrongly admitted hearsay evidence is presumed prejudicial to the nonoffering party unless shown otherwise. *State v. Skahill*, 966 N.W.2d 1, 15 (Iowa 2021).

One way the State can overcome the presumption of prejudice is to show that the wrongly admitted evidence was cumulative. *Id.* at 16. The State relies on the cumulative nature of the mother's testimony here. By the time the mother took the stand and presented the hearsay testimony, the child had already testified that Howland "touched [her] in the vagina" and "put his penis in [her] mouth, and he made [her] touch his penis." So, the mother's testimony was clearly cumulative. The question is whether the cumulative nature of it overcomes the prejudice.

We have case law that comes down on either side of this issue. On one side we have *Skahill*, where the supreme court found admission of a forensic interview of the child prejudicial even though it was cumulative of the child's trial testimony. *Id.* at 16–17. In reaching this conclusion, the court highlighted the powerful nature of the forensic-interview video, as it provided additional details not mentioned in the child's trial testimony, and how the inadmissible video was featured prominently in the State's closing argument by the prosecutor playing back dozens of excerpts from it. *Id.* On the other side, we have a number of cases in which no prejudice was found due to the cumulative nature of the hearsay evidence. *See, e.g.*, *State v. Juergens*, No. 20–0825, 2021 WL 4592827, at *3 (Iowa Ct. App. Oct. 6, 2021) (finding admission of child's statements to parents disclosing abuse to be harmless, as the statements were cumulative to other properly admitted evidence); *State v. Exline*, No. 18–1527, 2020 WL 568866, at *3 (Iowa Ct. App. Feb. 5, 2020) (finding no need to address whether child's

statements to a grandmother and friend fell within a hearsay exception, as they were cumulative of other evidence properly admitted); *State v. Neitzel*, 801 N.W.2d 612, 623 (Iowa Ct. App. 2011) (finding no need to determine admissibility of the child's statements to a parent, as the statements were "merely cumulative and therefore not prejudicial").

We find this case more closely aligned with the facts in *Juergens*, *Exline*, and *Neitzel* than with the facts in *Skahill*. Unlike the hearsay statements contained in the video in *Skahill*, the mother's testimony here about the child's statements did not provide details not provided by other testimony. *See* 966 N.W.2d at 16 (noting the improperly admitted forensic-interview video "provided additional background for the jury"). In fact, less detail was provided through the mother's testimony. Additionally, the mother's testimony lacks the inherent power of persuasion found to exist with the forensic-interview video erroneously admitted in *Skahill*. *See id.* ("Forensic interviews can be different from and, sometimes, more powerful than trial testimony."). Finally, in *Skahill*, the State made the improperly admitted hearsay a focal point of its closing argument, replaying "approximately a dozen excerpts and argu[ing] the significance of each to the jury" as well as using about half of the State's initial closing argument as "essentially a selective rebroadcast of the video with prosecutorial voiceover." *Id.* at 17. In contrast, the State made virtually no use of the mother's testimony about the child's statements to her in its closing argument. *See id.* (noting we have to look at how a case is tried in determining whether prejudice resulted). After consideration of the cumulative nature of the improperly admitted hearsay statements, we find any error harmless and decline to grant Howland a new trial on this basis.

## B.      Evidence Regarding Motivation to Fabricate

Howland also takes issue with the admission of this testimony by the mother:

> Q: Are you aware of any motivation that [the child] would have to fabricate this story?  A: No.
> DEFENSE COUNSEL: Objection, Your Honor.  It's witness vouching.  It's not relevant, and it's more prejudicial than probative.
> COURT: Sustained.

Howland complains that, while his objection was sustained, the answer was not stricken from the record and the testimony constitutes improper vouching.

We find this issue unpreserved for our review.  When, as here, an objection is made after the answer to the question is in the record, in order to preserve error, the objecting party must make a motion to strike the answer and ask that the objection precede the answer or offer an excuse for the delay in objecting.  *See State v. Reese*, 259 N.W.2d 771, 775 (Iowa 1977).  Howland took none of these actions, so he has not preserved his claim of error.

## C.      Evidence Regarding Howland's Role as Disciplinarian

Howland also objects to the introduction of evidence that he served as a disciplinarian for the child when he was in a relationship with the child's mother.[3] Even though no specifics of any disciplinary acts were given, he contends the testimony that he served as a disciplinarian was improper "bad acts" evidence that should have been excluded under Iowa Rules of Evidence 5.404(b) and 5.403.

Rule 5.404(b)(1) states, "Evidence of a crime, wrong, or other act is not

---

[3] Although the State challenges error preservation on this issue, Howland raised the issue via pretrial motion in limine and received a sufficiently definitive ruling such that we find error preserved.

admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Although the "other act" referenced in the rule is not defined, our supreme court has looked to other jurisdictions to conclude it refers to bad acts, meaning "any conduct of the defendant which may bear adversely on the jury's judgment of his character." *State v. Reynolds*, 765 N.W.2d 283, 289 (Iowa 2009) (quoting *United States v. Cooper*, 577 F.2d 1079, 1087–88 (6th Cir. 1978)), *overruled on other grounds by Alcala v. Marriott Int'l, Inc.*, 880 N.W.2d 699 (Iowa 2016). We fail to see how Howland acting as a disciplinarian—with no evidence of any conduct that could be viewed as excessive discipline—may bear adversely on the jury's judgment of his character, and Howland provides no argument and no citation to authority in support of his claim. As a result, we deem the issue waived. *See* Iowa R. App. P. 6.903(2)(g)(3) ("Failure to cite authority in support of an issue may be deemed waiver of that issue.").

## V.      Limit on Scope of Questioning

Howland argues that he was denied a fair trial because the district court prevented him from trying to prove the child's allegations were untrue by questioning witnesses about the child's mental state, the mother's mental state, the chaotic nature of the household, and "the family tension and drama that surrounded" the child between the time of the alleged abuse and when she disclosed it. We are unable to review these claims, as Howland failed to preserve error on them. "Error on appeal cannot be predicated on a ruling excluding evidence unless either the party that is offering the evidence 'informs the court of its substance by an offer of proof,' or 'the substance was apparent from the

context.'" *State v. Lacey*, 968 N.W.2d 792, 806 (Iowa 2021) (quoting Iowa R. Evid. 5.103(a)(2)). Here, no offer of proof was made and the substance of such a broad range of topics is not apparent from the context. Without an offer of proof, we are left to speculate about the substance of the excluded evidence, which we decline to do. *See id.*

## VI.    Denial of Motion for Mistrial Following Therapy Disclosure

Before trial, ruling on the State's motion in limine, the court ordered that "[t]he defense will not make any reference to the mental-health or substance-abuse counseling of any witness in this case." At trial, the following exchange occurred during the State's examination of the child's grandmother:

> Q. Did [the child]'s life change or did she benefit in any way by disclosing this abuse?
> . . . .
> Q. . . . [The child] continued to live with you after [the day the child disclosed the abuse in] 2019 for at least a year; right? A. Yes. Yes.
> Q. Okay. And nothing changed for [the child] after that?
> . . . .
> Q. You can answer. A. After the disclosure?
> Q. Yes, ma'am. A. I put her—she went to get therapy.
> Q. Okay. A. I put her in therapy right away.
> Q. I understand. A. But her life was—I mean, it wasn't—I mean, I put her in therapy, but, I mean, it wasn't—
> DEFENSE COUNSEL: Your Honor, may we approach?
> COURT: Yes.

This was followed by an off-the-record discussion between the court and counsel. At the first break outside the presence of the jury following this exchange, defense counsel made a record of what was discussed at the sidebar conference and made a motion for mistrial. Howland sought a mistrial based on the witness mentioning the child's therapy, claiming it violated the order in limine. The State responded by noting that the witness's answer was nonresponsive to the question and that

the order in limine was obtained by the State not Howland. In response, the court noted its belief that a violation of an order in limine "is not per se a reason or grounds for a mistrial." The court also noted that prejudice needs to be shown and stated, "I don't believe that anything that was said rose to the level or was so prejudicial that the defendant cannot receive a fair trial." So, the court overruled Howland's motion for a mistrial. Howland contends the court erred in doing so.

We review the denial of a mistrial for an abuse of discretion. *State v. Plain*, 898 N.W.2d 801, 811 (Iowa 2017). To establish reversible error, Howland must show the violation of the order in limine resulted in prejudice that deprived him of a fair trial. *See State v. Frei*, 831 N.W.2d 70, 80 (Iowa 2013), *overruled on other grounds by Alcala*, 880 N.W.2d at 708 n.3. "The party claiming prejudice bears the burden of establishing it." *Id.* at 80–81 (quoting *State v. Anderson*, 448 N.W.2d 32, 33 (Iowa 1989)).

Here, the violation was isolated and abrupt, caused by a nonresponsive answer from a witness. The point was not belabored, either in questioning or closing argument. We conclude this minor violation did not prejudice Howland to the extent he lost his opportunity for a fair trial, so we find no abuse of discretion in the court's denial of Howland's motion for a mistrial. *See State v. English*, No. 21–0315, 2022 WL 3052322, at *3 (Iowa Ct. App. Aug. 3, 2022) (concluding a mistrial was not necessary when a violation of an order in limine was "isolated and abrupt in nature").

## VII. Statement on Slide During Closing Argument

Howland filed a motion for new trial based on the prosecutor displaying a projected slide to the jury during closing argument that read, "He did it." The court

denied the motion, and Howland claims error.

We do not address the merits of this issue, as error is not preserved. Howland did not object during the State's closing argument when the slide was displayed, nor did he move for a mistrial. The first time Howland raised an issue about the slide was after the guilty verdict was returned. This is too late to preserve error. A party cannot take a "wait-and-see" approach by refraining from objecting to remarks made in closing argument until after the verdict is reached. *Kinseth v. Weil-McLain*, 913 N.W.2d 55, 67 (Iowa 2018). Instead, a party must make a timely objection, as timely objections give the district court an opportunity to admonish counsel or appropriately instruct the jury. *Id.* As Howland raised no objection until the verdict was returned, he did not preserve error.

Howland attempts to excuse his failure to timely object or move for a mistrial by the fact that his counsel claims not to have seen the slide at issue—only being told about it after the verdict. We are not persuaded by Howland's excuse. We expect attorneys to be aware of the information presented to the jury. There is nothing in the record suggesting that Howland's counsel could not see the slide or that he was prevented from moving to a vantage point from which counsel could see the slide, so we conclude that any claimed failure to see the slide does not excuse counsel's failure to act upon it if counsel thought the slide was improper.

## VIII. Conclusion

Having rejected each of Howland's claims, we affirm Howland's convictions.

**AFFIRMED.**