# IN THE COURT OF APPEALS OF IOWA

No. 23-1692
Filed February 19, 2025

**STATE OF IOWA,**
     Plaintiff-Appellee,

**vs.**

**DUSTIN GERALD PLATNER,**
     Defendant-Appellant.
_____

Appeal from the Iowa District Court for Linn County, Ian K. Thornhill, Judge.

A criminal defendant appeals his conviction for sexual abuse in the second degree. **AFFIRMED.**

Kent A. Simmons, Bettendorf, for appellant.

Brenna Bird, Attorney General, and Katherine Wenman, Assistant Attorney General, for appellee.

Considered by Greer, P.J., and Buller and Langholz, JJ.

**BULLER, Judge.**

Dustin Platner appeals his conviction for second-degree sexual abuse after a jury found him guilty of penetrating a stranger's vagina at a park with his fingers. He asserts the district court should have granted a mistrial when a police officer mentioned not wanting to use a "booking photo" when creating a photo array for the victim to review. Seeing no abuse of discretion in the district court's denial of the mistrial motion, we affirm.

## I. Background Facts and Proceedings

In the midst of the pandemic, S.P.—a twenty-one-year-old preschool teacher—delivered groceries to a friend who had recently given birth, then stopped at an outdoor nature park in Mount Vernon to enjoy the weather. A man she didn't know approached her and made small talk, then "leaned in against" S.P. as if to kiss her. She said, "Oh, I'm sorry if I gave you the wrong impression. I have a boyfriend." And she tried to walk away. But the man "pushed [S.P.] against a tree," pressed a folding knife against her stomach, and began fondling her breasts and unbuttoning her pants.

The man kept calling S.P. "Jessica," and S.P. kept repeating: "That's not me. That's not my name." The man turned S.P. around, pressed the knife into her back, and pulled down her pants. Then he penetrated her vagina with his fingers multiple times. Next, the man removed the knife from S.P.'s skin to take off his own pants and underwear. S.P. saw the man's blue Hanes underwear and his exposed erect penis. At some point, S.P. told the man, "No, I don't want this," and he responded: "I wasn't asking." S.P. pushed against the tree while the man was

pulling his pants down, knocked him off balance, and started "hightailing it to [her] car." She got inside, called 911, and "gunned it out of the park."

The 911 dispatcher directed S.P. to a local ambulance station, where she met with first responders and then police. She gave generally consistent accounts to the 911 dispatcher, a responding police officer, and a sexual assault nurse examiner. Throughout these conversations, officers and medical personnel described S.P. as "visibly upset," "emotional," "hysterical and distraught," or "crying," and described how her "mascara was smeared down her face." She told police about her attacker's blue Hanes underwear and that he was wearing a black shirt and blue jeans.

When shown a consecutive photo array at the hospital, S.P.'s "hands started trembling and she began to cry" when she saw Platner's photo. Although she was not 100% sure he was the assailant, she looked at his photo the longest and rated him as the most likely suspect of the six photos. When later shown a photo of Platner taken at the park moments after she called 911, S.P. held her hands to her face, started sobbing, and positively identified him as the man who sexually assaulted her.

Local police responded to the nature park "within a minute" of being dispatched. An officer saw Platner and one of his friends in the park, and the officer thought Platner matched the general description S.P. provided. Platner was wearing blue jeans and a black shirt. And when he was later arrested and his vehicle searched, officers found a folding knife in the vehicle and blue Hanes underwear on his person. Officers also discovered that Jessica—the name the assailant kept calling S.P.—was the name of Platner's wife.

At trial, S.P. identified the underwear seized from Platner as the underwear worn by her assailant. She said the seized knife was consistent with what she remembered her attacker using. And she positively identified Platner as the man who sexually assaulted her at the park.

A Linn County jury found Platner guilty as charged of sexual abuse in the second degree, a class "B" felony in violation of Iowa Code section 709.3(1)(a) (2020). The court sentenced Platner to twenty-five years in prison with a mandatory minimum of seventeen-and-one-half years. He appeals.

## II.      Motion for Mistrial

Platner's sole claim on appeal is that his motion for mistrial made following a police officer's reference to his "booking photo" should have been granted and he is therefore owed a new trial. The problematic testimony came about when the police officer who showed S.P. the photo array was asked where the images came from, and he answered in part: "I think I initially had a booking photo of Mr. Platner and I didn't want to use that so I—I found one off his Facebook page." The officer finished his answer, and the prosecutor asked a new question.[1] Then Platner's attorney asked for a sidebar and moved for a mistrial outside the presence of the jury, asserting the officer's reference to "booking" violated a pretrial ruling excluding evidence of Platner's criminal history. The State replied that it did not anticipate the officer giving that answer, and that it was at best a nonprejudicial

---

[1] An error-preservation problem lurks here. When an objection is made to a question after the answer is in the record, "in order for the objection to be adequate a motion to strike must be made, application must be made to have the objection precede the answer, or an excuse offered for the delay in objecting to the evidence." *State v. Reese*, 259 N.W.2d 771, 775 (Iowa 1977). We assume without deciding that error was preserved even though this procedure wasn't followed.

"passing reference," as none of the photos actually shown to S.P. were booking photos.

The district court observed the testimony "kind of went unremarkable" in terms of delivery. The judge also explained: "[W]hen I heard the answer I wasn't clear whether it was the booking related to this matter or something else." And the court denied the motion for mistrial, reasoning:

> I'm denying the motion for a mistrial because I think at this point it was vague enough and in the context of what the jury already specifically knows, that the Defendant is here being accused of something. There's nothing to indicate that this photo in the context and the limited means that it was answered is something separate from this trial, so I'm not going to grant a mistrial.

The court also noted it had, as part of preliminary instructions, read the stock instruction admonishing jurors not to draw any adverse inferences based on the "present situation of the Defendant." The court opined, without disagreement from defense counsel, that a specific limiting instruction would only draw attention to the witness's answer.

"We give district courts considerable discretion in ruling upon motions for mistrial, since they are present throughout the trial and are in a better position than the reviewing court to gauge the effect of the matter in question on the jury." *State v. Brown*, 5 N.W.3d 611, 615 (Iowa 2024) (cleaned up). "Accordingly, we ordinarily only find an abuse of discretion upon the denial of a mistrial where there is no support in the record for the trial court's determination." *Id.* (cleaned up).

A supreme court decision, *State v. Cuevas*, 288 N.W.2d 525 (Iowa 1980), is strikingly on point with the situation here. There, the prosecutor referred to a witness seeing the defendant's "mugshot." *Cuevas*, 288 N.W.2d at 535.

"Mugshot," of course, is a colloquial term for the "booking photo" referenced in this trial. The district court in *Cuevas* denied the motion for mistrial, reasoning the "mugshot" reference was not so prejudicial as to warrant mistrial as a remedy. *See id.* The supreme court affirmed, reasoning that "what the jurors actually concluded [about the 'mugshot'] reference is a matter of speculation," and it was unclear if it meant the arrest in that case or another. *Id.* at 536. This is essentially the same observation made by the district judge here. As in *Cuevas*, we credit the district court's advantaged position to assess potential prejudice, we find adequate record support for the court's ruling, and we discern no abuse of discretion.

We also find the likelihood of any prejudice heavily mitigated by the strength of the State's evidence, which would render any error in denying the motion for mistrial harmless. S.P. gave materially consistent accounts of the attack to 911, the police, the sexual assault nurse examiner, and the jury. She identified her assailant by appearance and described his clothing, including the color and brand of his underwear, all of which matched Platner. Platner also called S.P. his wife's name. Police found him at the crime scene within moments of the assault on S.P. And she positively identified him as her assailant before and at trial. Contrary to Platner's arguments otherwise,[2] this was a compelling case with strong evidence of his guilt. The police officer's reference to a "booking photo" was not prejudicial.

**AFFIRMED.**

---

[2] We recognize that, packaged among Platner's argument on prejudice is an attack on the suggestibility of the photo array. Platner does not challenge the admissibility of the array on appeal, nor could he: that issue was not preserved, and we cannot consider it.